(No. 13788.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK JOHNSON, Plaintiff in Error.

*Opinion filed April 21, 1921—Rehearing denied June 9, 1921.*

1. CRIMINAL LAW—*when testimony of child of tender years is admissible.* In a prosecution for the crime against children, the testimony of the prosecuting witness, who is but eight years of age, is admissible if the preliminary examination shows that the child understands the nature and meaning of an oath and that she is of sufficient intelligence and understanding to comprehend the things about which she is called upon to testify.

2. SAME—*prosecutrix's testimony is not incompetent because proper language was suggested to her.* In a prosecution for the crime against children, the testimony of the prosecuting witness, who is but eight years of age, is not rendered incompetent because proper language was suggested to her before the trial to enable her to express herself modestly in describing the acts of the defendant.

3. SAME—*when verdict will not be set aside.* Where the evidence is conflicting the weight to be given the testimony of the witnesses is a matter for the jury, and its verdict finding the defendant guilty will not be set aside unless the finding is so palpably against the evidence as to indicate that the verdict is based upon passion or prejudice.

4. SAME—*when instruction as to weight of testimony of prosecuting witness may be refused.* An instruction as to the weight to be given the testimony of the prosecuting witness in a prosecution for the crime against children, which instruction embodied the element of age of the witness, is properly refused where another instruction is given stating that her testimony must be clear and convincing before it will justify a verdict of guilty, although the given instruction does not specifically tell the jury to consider the age of the witness.

5. SAME—*when new trial will not be granted on newly discovered evidence.* A new trial will not be granted on the ground of newly discovered evidence unless it is shown the evidence could not have been produced on the trial by the use of reasonable diligence and that such evidence is reasonably certain to result in a different verdict.

6. SAME—*defendant cannot change his defense after verdict of guilty.* Under a plea of not guilty a defendant may make as many and different defenses as he sees fit, but if he proceeds to trial upon

the theory that he did not commit the crime, without making any other defense, he cannot, after a verdict of guilty, have a new trial on the ground that he was insane when he committed the crime but that his counsel did not know of such insanity until after the trial.

7. SAME—*applicant for new trial on newly discovered evidence has burden of proving due diligence.* Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts and will be subjected to the closest scrutiny, and the burden will be upon the applicant to rebut the presumption that the verdict is correct and that there was no lack of due diligence.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

R. L. RUSSELL, and J. L. SPAULDING, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, CAREY R. JOHNSON, State's Attorney, and EDWARD C. FITCH, (JOSEF T. SKINNER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Frank Johnson, was convicted in the circuit court of Bureau county of the crime against children and was sentenced to the penitentiary. He prosecutes this writ of error to reverse that judgment on the grounds that the complaining witness was incompetent, that the verdict is against the evidence, that the court erred in refusing an instruction, and that the court erred in refusing to grant a new trial.

Plaintiff in error is sixty-nine years of age and has lived in the city of Princeton for more than fifty years. The complaining witness, Alice Pierson, was eight years of age January 9, 1921. Her father and mother were dead and she lived with Mr. and Mrs. John Peterson, of Princeton. The testimony of plaintiff in error and the complaining witness was in substantial accord as to all occurrences

leading up to the commission of the alleged offense but with respect to the commission of the offense was in direct conflict. The complaining witness left her home on Sunday morning, September 19, 1920, to go to Sunday school at the Swedish Lutheran church. The usual way took her past the residence of plaintiff in error. He was in his front yard, and when she arrived in front of his home he invited her to come in and get some grapes. She followed him to the rear of the house, where he got some grapes and then went into the house for some paper in which to wrap them up. When he handed her the package of grapes they were on the back porch, which was inclosed. According to the testimony of the little girl plaintiff in error put his hands under her dress and passed his hands over her body. He did not get inside her underclothes and did not in any way physically injure her. She testified that he then unbuttoned his pants and exposed himself to her and asked her if she did not want to play with his private parts. She testified that she said she did not, and that she opened the porch door and ran away to Sunday school. Plaintiff in error denies that he felt of the body of complaining witness and denies that he exposed his person to her.

It is first contended that the complaining witness was incompetent to testify and that she was not able to understand the nature of an oath. The trial took place November 15 and 16, 1920, approximately two months before she arrived at the age of eight years. She was then attending the public schools and was in the second grade and appeared to be a child of ordinary intelligence. She testified that she understood the difference between a truth and a falsehood and that she knew that it was wrong to tell a falsehood, and that when people take an oath to tell the truth and then tell a falsehood something bad happens to them after they are dead. The competency of a child to testify depends upon his or her intelligence, understanding and moral sense. If the preliminary examination shows

that the child understands the nature and meaning of an oath and is of sufficient intelligence and understanding to comprehend the things about which she is called upon to testify, it is not error to admit her testimony. (*Sokel* v. *People,* 212 Ill. 238; *People* v. *Karpovich,* 288 id. 268.) Whether complaining witness possessed the understanding necessary to make her a competent witness was determined by the court from a preliminary examination. He saw the witness and heard her testify and was in a much better position to determine her competency than we are. From a review of the preliminary examination and of her testimony before the jury we are satisfied that the court did not err in permitting complaining witness to testify.

It is next urged that the evidence does not show beyond a reasonable doubt that plaintiff in error is guilty of the charge laid in the indictment. We realize the danger of resting a conviction on the testimony of a child of tender years, and such a conviction ought not to stand unless the testimony is corroborated or is otherwise clear and convincing. There is some conflict in the testimony of the complaining witness but none in material matters. It also appears that she talked with her uncle, John Peterson, and with the State's attorney, regarding liberties taken with her, and they suggested to her words to use in describing the actions of plaintiff in error. For instance, she testified that plaintiff in error "took a part of his body out of his pants," and that Peterson told her to make that kind of an answer. It is natural that complaining witness would have difficulty in describing the acts of plaintiff in error, and the mere fact that language was suggested to her by which she might express herself modestly is not sufficient to reject her testimony. Peterson testified that he went to see plaintiff in error the morning following the alleged assault and that he found him employed at his trade as an electrician. He charged plaintiff in error with the offense, and plaintiff in error replied that he did nothing but pull

up the little girl's stocking. On Thursday of the same week plaintiff in error requested Peterson to come to the court house and have a talk with him about the case. They sat down together and plaintiff in error suggested that they settle it in some way. Peterson told him that he could not settle the matter after he had done what he had to the little girl, and plaintiff in error said: "Well, it was not quite so bad as she said; I don't think that I unbuttoned my pants before her, but they might have been unbuttoned and I did not know it." Later on he said: "I don't think I asked her to play with it or if she wanted to play with it." All of these statements are denied by plaintiff in error. The three witnesses whose testimony we have set out in substance were the only witnesses who testified on the trial. The jury and the trial judge saw and heard these witnesses, and they were in much better position to determine the credibility of the witnesses than we are from the written record. The weight to be given the testimony of these witnesses was a matter for the jury, and its verdict will not be set aside unless the finding is so palpably against the evidence as to indicate that the verdict is based upon passion or prejudice. (*People* v. *Karpovich, supra.*) The trial judge who heard this testimony has approved the verdict, and we are convinced from an examination of the record that plaintiff in error was proven guilty beyond a reasonable doubt.

Plaintiff in error contends that the court erred in refusing to give his instruction No. 34. This instruction told the jury that in judging the weight to be given the testimony of the prosecuting witness and in judging the credibility of the witness they should take into consideration the age of the witness, her ability to know and understand the nature and meaning of an oath, her opportunity to know and appreciate the facts concerning which the testimony was given, and whether she was corroborated by other witnesses or circumstances of the case. The tenth instruction

asked by plaintiff in error and given by the court told the jury that they would not be justified in finding the defendant guilty upon the uncorroborated testimony of the prosecuting witness unless such testimony was clear and convincing, and of such nature as, when considered with all the other evidence and circumstances in the case, to remove from their minds all reasonable doubt of his innocence. Either of the instructions was proper to be given but the court properly refused to give both of them. Both covered the same subject and both cautioned the jury against receiving the testimony of a child of tender years without scrutinizing the testimony with care. True, the tenth instruction does not specifically mention the age of the witness as one of the elements to be considered, but it mentions the prosecuting witness, the age of whom the jurors all knew, and pointed out that her testimony must be clear and convincing before it would justify a verdict of guilty. Considering the instructions as a series, we find that the court fully and fairly presented the law of the case to the jury.

Plaintiff in error was placed on trial two months after the offense was committed. He was represented by counsel who had lived and practiced law in the city of Princeton for more than twenty years. His defense was an absolute denial of taking any indecent liberties with the prosecuting witness. The jury returned its verdict November 16, 1920. On November 17, 1920, a motion for a new trial was made, and the following day it was overruled and plaintiff in error was sentenced to the penitentiary. December 6, 1920, a motion was made to vacate and set aside the judgment and to vacate the order of the court overruling the motion for a new trial and to grant a new trial on the ground of newly discovered evidence. In support of this motion four affidavits were filed. One was by counsel who represented plaintiff in error during the trial. In this affidavit he stated that he was employed

to represent plaintiff in error some six weeks before the trial; that plaintiff in error had at all times protested his innocence and denied taking indecent liberties with Alice Pierson; that after the conviction of plaintiff in error a physician who had known plaintiff in error for many years suggested to him that the plaintiff in error was suffering from enlarged and irritable prostate glands, and that a man suffering from this trouble often committed the offense charged against plaintiff in error but was not responsible for his conduct; that he made no defense of insanity on the trial for the reason that he did not know or suspect that plaintiff in error was insane; that since the suggestion had been made to him he had caused the plaintiff in error to be examined by three physicians, and that he had learned from them that plaintiff in error was afflicted with an irresistible insane impulse to take indecent liberties with children; that the particular form of insanity with which the plaintiff in error was suffering was a hidden malady which a layman would not discover; that he now believes plaintiff in error was insane at the time it is alleged he committed the crime charged, and that he exercised diligence in bringing it to the attention of the court as soon as he learned of it. The other three affidavits were by Dr. O. J. Flint, Dr. C. C. Barrett and Dr. M. A. Nix, physicians in practice at Princeton for twenty, fifteen and ten years, respectively. They each state that they had made an examination of plaintiff in error for the purpose of ascertaining his mental and physical condition; that from such examinations they had formed the opinion that plaintiff in error was insane September 19, 1920, and was insane at the time of making said affidavits; that the insanity was and had continued to be of such a degree and character as to create in plaintiff in error an irresistible and uncontrollable impulse to do the acts charged against him, overriding his reason and judgment and obliterating his sense of right and wrong as to the particular acts and depriving him

of the power of choosing between right and wrong as to such acts. These affidavits merely state the conclusions of the physicians and do not state the facts from which they draw these conclusions.

The rule uniformly followed in this State is, that a new trial will not be granted on the ground of newly discovered evidence unless it is shown that the evidence could not have been produced on the trial by the use of reasonable diligence, and it must also be shown that the newly discovered evidence is reasonably certain to result in a different verdict. (*People* v. *Colvin*, 294 Ill. 196.) The attorney, all the physicians and plaintiff in error had lived in the city of Princeton for many years and were acquainted with each other. It does not appear why these physicians and his attorney made no examination of him to discover his physical and mental condition. There was ample time between the time of the commission of the offense and the trial to make preparation to present any defense that was considered advisable. Under a plea of not guilty the defendant may make as many and different defenses to a charge as he may see fit, but if he proceeds to trial upon a certain line of defense without making an inquiry and preparation as to any other defense that he may have to the charge, the courts cannot permit him, after the issue has gone against him, to thereafter come in and upon a motion for a new trial suggest for the first time that there is other evidence material to his defense upon a new and different theory. He cannot divide his defense and present it to the court piecemeal. If he were to be permitted to pursue one line of defense without inquiry as to any other until the issue had gone against him upon that line, and then for the first time inquire as to another defense and be granted a new trial upon the ground that it was newly discovered, there would be no end of litigation. (*People* v. *Freeman*, 92 Cal. 359, 28 Pac. 261; *Donahue* v. *State*, 165 Ind. 148, 74 N. E. 996.) Applications for

new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and, in order to prevent as far as possible fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequences of an adverse verdict, such applications will be subjected to the closest scrutiny by the court, and the burden will be upon the applicant to rebut the presumption that the verdict is correct and that there was no lack of due diligence. (*People* v. *LeMorte,* 289 Ill. 11.) We find no evidence of bad faith on the part of counsel in this case, but to lay down the rule contended for by them would open the door to a dangerous practice and would subject the People to endless litigation in the effort to enforce the criminal laws. Plaintiff in error loses none of his rights by the action of the trial court in denying him a new trial. The new defense which he proposes to make carries with it an admission that he committed the acts charged against him, coupled with the assertion that he was not responsible for these acts because of a peculiar form of insanity. The affidavits of his physician show that this form of insanity still exists. If a new trial were granted and the jury believed this defense, it would be their duty to return a verdict which would require the commitment of plaintiff in error to the Chester State Hospital for the Criminal Insane. The law now provides a method for holding an inquisition regarding the sanity of plaintiff in error, and if it is determined upon further examination that plaintiff in error is insane he may be transferred to the asylum, where he would necessarily go if his position were maintained on a new trial. The court properly overruled the motion to vacate the judgment and former order and to grant a new trial.

The judgment is affirmed.

*Judgment affirmed.*