(No. 15454.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HUBERT BLANCH, Plaintiff in Error.

*Opinion filed October 20, 1923.*

1. CRIMINAL LAW—*when complaint of prosecutrix is of little probative force.* The complaint of the prosecutrix has but little probative force as evidence in a prosecution for rape where it is shown to have been made more than a month after the commission of the alleged crime and in response to questioning.

2. SAME—*when new trial will not be given on ground of newly discovered evidence.* A new trial will not be granted on the ground of newly discovered evidence unless diligence has been shown both by the attorney and client with reference to presenting the matter at the time of the first trial.

WRIT OF ERROR to the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

JESSE PEEBLES, and A. J. DUGGAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, LESLIE M. HARLAN, State's Attorney, and JAMES B. SEARCY, (ELBERT N. NEVINS, and JAMES H. MURPHY, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, Hubert Blanch, was found guilty in the circuit court of Macoupin county of rape upon a girl aged about twelve years and was sentenced to the peniten-

tiary for five years.   He brings the case to this court by writ of error.

The prosecuting witness, Anna Mabel VanMeter, testified that she lived in Carlinville and at the time of the occurrence was in the seventh grade of the public schools; that in the evening of January 6, 1922, she and Hilda Murphy, aged seventeen years, with a sister-in-law of the prosecuting witness, Mrs. Anna VanMeter, went to a picture show, and sitting near them were Denvir Wise and Clyde VanDeveer.   While they were in the picture show, or on leaving it, Wise and VanDeveer had a talk with Mrs. Van-Meter, and as a result of this talk Blanch was asked to take them for a ride in an automobile of which he had charge,— a Ford sedan.   The testimony of these witnesses is not entirely in accord as to how Blanch came to be asked. There is some testimony to the effect that Mrs. VanMeter made the request, while there is other testimony that Van-Deveer and Wise asked Blanch to take them, with some ladies, for a ride, and that they got into the car and went to the court house square, where they picked up Mrs. Van-Meter, Miss Murphy and the prosecuting witness.   The testimony is substantially to the effect that when they got into the car Mrs. VanMeter sat in the front seat with Blanch and the other people got into the rear part, the complaining witness sitting on Wise's lap; that they drove out on a hard road, and when they came to a country school house they drove into the school house yard for the purpose of obtaining some water, as the engine needed cooling, and while they were there, finding the school house door unlocked and a fire in the stove still burning, some of them went into the school house to get warm.   Some of the testimony is to the effect that the complaining witness did not leave the car but that all the others at various times left the car and went into the school house or to other places. The complaining witness testified that finally, after the others had left the car and she and Blanch were alone, he

asked her to have sexual intercourse with him and she re-
fused and called for assistance from Mrs. VanMeter and
started to get out of the car, but he pulled her back and
laid her on the back seat and had intercourse with her;
that about this time the others returned and Blanch got out
of the back seat as if nothing had occurred and that Mrs.
VanMeter fainted. There is no testimony to indicate that
the fainting had anything to do with the alleged offense,
but the testimony would seem to indicate that Mrs. Van-
Meter was sick while in the school room, whether from
drinking water or from other causes is not clear. When
Mrs. VanMeter was revived Blanch took the party back to
Carlinville and the witness stayed that night with Mrs. Van-
Meter, telling her what had occurred with Blanch, but there
is nothing in the record tending to show that she complained
to or talked with anyone else until she had a conversation
with one of the police officers in Carlinville, about a month
and a half later. The testimony of the father of the com-
plaining witness and the birth certificate introduced in evi-
dence show that she was born on May 16, 1909, and was
twelve years old at the time of the occurrence. This was
all the evidence introduced on behalf of the State.

Plaintiff in error testified that he was a motorman in a
coal mine; that he did not attend the picture show on the
evening in question but did use his car for a ride with the
complaining witness, Mrs. VanMeter, Miss Murphy, Wise
and VanDeveer out to the school house; that he drove into
the school house yard to get some water for the radiator
and to let the engine cool off; that they all remained there
for about twenty minutes, but that he and the prosecuting
witness were never left alone together in the car and that
he did not have sexual intercourse with her at that or any
other time and place. On cross-examination he testified
that they all went into the school house to get warm by
the stove except the prosecuting witness and Wise, who re-

mained in the car together; that afterward he drove the car to town with the other parties.

Clyde VanDeveer testified on behalf of plaintiff in error that he is a miner and restaurant keeper; that he went on the ride with the party, it having been agreed upon at the picture show that they would take a ride afterward. He described the various goings and comings of the different members of the party between the car and the school house, and testified that so far as he knew Blanch had no improper relations of any sort with the prosecuting witness.

Denvir Wise testified that he is an assistant mine manager and was of the party; that they went to the school house and remained there about half an hour; that some of the people went into the school house to get warm at the stove, which still contained a fire, but to witness' knowledge there was no improper conduct between any of the parties. The testimony of this witness was also to the effect that after the party had been taken back to Carlinville, he and Blanch later in the evening drove to the home of Mrs. VanMeter and talked with her at the front door alone, as witness wanted to discuss mine matters with her husband, who was working in the mine under witness' direction. The argument of counsel for the State is to the effect that they called for the purpose of getting Mrs. VanMeter to say nothing about the relations of Blanch with the prosecuting witness. Mrs. VanMeter herself did not testify at the time of the trial and no reason is given why she was not called as a witness.

After the verdict of the jury was returned plaintiff in error's attorney made a motion for a new trial, and in support thereof filed the affidavit of Hilda Murphy Ripley, who as Hilda Murphy had been present on the ride. She had afterward married one Ripley. This affidavit sets forth that she was one of the party in the car; that the witness did not get out of the automobile during all the time it was in the school house yard and was present during all

the time that Blanch was in the car with the prosecuting witness, and that no act of intercourse took place between Blanch and the prosecuting witness on that trip or while they remained in the school house yard; that she told this fact to the State's attorney and his assistant before the trial, and she was afterward sworn and excluded from the room with the other witnesses on the trial of the case; that after the trial Blanch talked with her and found she would testify as set forth in her affidavit. It appears also from the record that the affidavit of this witness was not called to the attention of the trial court in support of the motion for new trial or discussed by counsel upon the hearing of the motion for new trial, and no reason is given, other than as already stated, as to why this testimony was not offered at the time of the trial.

The prosecuting witness made no complaint of the alleged crime, except, as she testified, she talked the matter over with her sister-in-law on reaching the latter's home the night of the alleged offense, and so far as the record shows the next statement she made to anyone else was in her conversation with the chief of police of Carlinville, about a month and a half later. It is not shown in the record whether she went to the chief of police voluntarily or whether he heard of the matter through other sources and went to her to inquire about it. The conviction rests entirely upon the testimony of the prosecuting witness. Except as to what occurred for a short time in the school yard, the testimony might apply to either of the other men present who had taken part in the automobile ride. Excepting the matters in which it is shown all the members of the party took part, there is practically no corroborative testimony of the statement of the prosecuting witness that plaintiff in error committed the act in question. She made no complaint of the alleged crime as such complaint is understood in prosecutions for rape. This court has held that "when the complaint is not made immediately, unless the

delay is satisfactorily explained, its value as evidence is much weakened, and when the complaint is made, not as the spontaneous act of the prosecutrix but in response to questions put to her, * * * the complaint of the prosecutrix assumes the form of a recital of the facts connected with a past transaction and is in the nature of hearsay evidence, and has but little, if any, probative force as evidence." (*Cunningham* v. *People,* 210 Ill. 410.) The fact that a young girl might be misused while on a trip with companions who might not take such matters very seriously, or even if she herself might not feel disposed to complain of what was done to her, would not render such an occurrence any the less a crime, especially in the case of a young girl under the age of consent, in case the testimony were of such a nature as to clearly show the wrong had been committed and who committed it. However, the courts must remember the oft-quoted statement of Lord Hale as to rape, "that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused though never so innocent." (1 Hale, 635.) "Accordingly the testimony of the prosecuting witness must be scrutinized with caution, and where the defendant denies the crime her evidence should be corroborated." *Stevens* v. *People,* 158 Ill. 111.

The plaintiff in error complains of the refusal of the court to give three instructions asked by him. These are variations, in different language, of the doctrine that the State is required to prove the defendant guilty beyond a reasonable doubt in order to justify a verdict of guilty. The subject of reasonable doubt was fully covered by the instructions that were given for plaintiff in error, and we do not believe that there was reversible error in the refusal to give the instructions that were refused.

The affidavit of Hilda Murphy Ripley was vital and important and should have been considered and passed upon by the trial judge on motion for new trial if it had been

presented, but it is apparent from the record it was not presented to the judge on motion for new trial or called to his attention. This court has said: "The rule uniformly followed in this State is, that a new trial will not be granted on the ground of newly discovered evidence unless it is shown that the evidence could not have been produced on the trial by the use of reasonable diligence, and it must also be shown that the newly discovered evidence is reasonably certain to result in a different verdict." (*People* v. *Johnson,* 298 Ill. 52; *People* v. *Colvin,* 294 id. 196.) We do not think this case should be reversed on the ground that the trial judge did not allow a new trial because of the newly discovered evidence set forth in the affidavit of Mrs. Ripley, as proper diligence was not shown in presenting the matter at the trial, or at least on the motion for new trial. The rule has been followed in this State not to reverse on the ground of newly discovered evidence unless diligence has been shown by both the attorney and client with reference to presenting the matter at the time of the first trial. Neither do we think the case should be reversed on the ground of the rejection of certain instructions offered by counsel for plaintiff in error. The evidence as to plaintiff in error's guilt, however, is somewhat uncertain and not fully convincing. The charge is of such a character, that in view of the danger of a false charge being made against one accused when the complaint is uncorroborated in every way, this court will be better satisfied if the question of the guilt of plaintiff in error is presented to another jury, even though we do not hold that the verdict should be reversed on the grounds heretofore discussed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*