(No. 30620.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK GAMBONY, Plaintiff in Error.

*Opinion filed November 18, 1948—Rehearing denied Jan. 17, 1949.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (JOHN T. GALLAGHER, W. S. MIROSLAWSKI, ARTHUR MANNING, and MELVIN S. REMBE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Frank Gambony, plaintiff in error, was tried in the criminal court of Cook County on an indictment consisting of two counts, the first charging him with taking immoral, improper and indecent liberties with a certain female child of the age of thirteen years and the second charging him with contributing to the delinquency of such minor child.

He was tried by a jury and found guilty on the first count of the indictment. Motions for a new trial and in arrest of judgment were overruled and he was sentenced to the penitentiary for a term of not less than five nor more than ten years. To reverse the conviction and sentence this writ of error is prosecuted.

Errors assigned by the plaintiff in error are: (1) That he was not proved guilty beyond all reasonable doubt; (2) that improper evidence was admitted and proper evidence excluded on the trial; (3) that he was deprived of a fair and impartial trial by the prejudicial conduct of the State's Attorney; (4) that the court erred in refusing to give proper instructions at his request; and (5) that counsel was not given an opportunity to argue a motion for a new trial.

The evidence discloses the prosecuting witness, a female child thirteen years of age, who was in the sixth grade of school at Saint Ann's, became acquainted with plaintiff in error in the summer of 1946, through a girl friend, one Charlotte, who was sixteen years of age. Charlotte introduced her to plaintiff in error at which time he took them in his automobile for a short ride past Lincoln Park and then brought them back in front of Charlotte's home; that he gave Charlotte fifty cents saying it was for both of them and they took the money and went to the corner drugstore and had a coke; that she saw plaintiff in error again in about two weeks with Charlotte, which was on a school day; that Charlotte called plaintiff in error on the telephone and that the prosecuting witness, with Charlotte, saw him in front of a grocery store on the corner of Webster and Sedgwick; that they got in his automobile and Charlotte asked him for some money which he gave her and then drove them to school; that thereafter, on several occasions, he took them in his automobile to school, took them riding and always gave Charlotte money; that he took the prosecuting witness to his place of business,

which is located on North Avenue; that it was an electric shop and in the back there was a sink, ice-box, bed, desk and phonograph. The evidence further discloses that prosecuting witness continued to call at his place of business, talk to him on the telephone, and he met her on several occasions, taking her to school and giving her small amounts of money.

The prosecuting witness testified that she went to plaintiff in error's place of business with Barbara Baumgardner, a thirteen-year-old girl, and when they went into the back of his place, plaintiff in error was playing the phonograph; that he offered them whisky and showed them a nude picture. She testified, in particular, that on April 16, 1947, she saw plaintiff in error between 5:00 and 6:00 o'clock in the afternoon when he stopped his car while she was on the street and said, "Hop in;" that he said, "Let's go to the shop;" that when they got there he called her in back and said he would show her some pictures; that they sat down on the bed looking at the pictures, he telling her they were pictures of himself when he was on the stage. She further testified, "He pinned my one arm down to the bed with his and got on top of me. He pulled down my under-wear. He unzipped his trousers before. I tried biting him but I couldn't." She testified that after this instance she visited him again and on other occasions received money from him.

The testimony of the prosecuting witness was corroborated as to plaintiff in error's attentions to her and other girls, but proof of the alleged assault depended upon her own testimony. Plaintiff in error admitted the attentions paid by him to the girls, but denied any impropriety with the prosecuting witness.

There was considerable evidence offered that plaintiff in error carried on some negotiations with the People's witnesses before and during the trial. He testified they were trying to shake him down for $5000. The People's wit-

nesses testified he tried to bribe them to drop the case or testify in his favor.

The mother of the prosecuting witness testified that during the pendency of this suit plaintiff in error called her on the telephone and talked with her and she had him talk with her husband.

The father testified that he talked with plaintiff in error twice over the telephone and that plaintiff in error asked him, "I want to know whether you and your wife would give me permission to marry your daughter;" that he said, "You are a forty-three-year-old man and want to marry my daughter thirteen years old. No;" that plaintiff in error then said, "I like that kid and she likes me." He further testified that he was later called on the phone by plaintiff in error who said he would like to meet him at Russo's place, that they could go·back there and talk; that he told him there was nothing to talk about; that plaintiff in error then said if Gilio could get his daughter to change her story it would make things a lot easier for him; that he said, "Why should I do that?" And plaintiff in error said, "After all, you are a Dago and I am a Dago."

Edna Chivina testified, in rebuttal, that she met and talked with plaintiff in error on a number of occasions while the cause was on trial; that at the restaurant across the street from where the trial was being heard, during the lunch period, he talked to her and asked her to say that they (the Gilios) were supposed to ask for $5000; that he offered her a reward to do this and asked her if she knew anything about the telephone calls to the Gilios and she told him she did; that later, accompanied by her son, James Baumgardner, she met him at Adler's drugstore, and he told her he would not have an awful lot right now until after the case but would give her $500 and following that would be money until $5000 was paid.

James Baumgardner testified that he went with his mother to Adler's drugstore and Gambony came in and sat

down with them; that he said things did not look too good for him, that if we would do him this favor he would help us out; that he would give us $500 for doing it.

Plaintiff in error contends the People failed to prove his guilt beyond all reasonable doubt and in support of this contention he cites the case of *People* v. *Pazell,* 399 Ill. 462, and urges that it is the rule that where a conviction of taking indecent liberties with a child rests upon the testimony of the prosecuting witness and the defendant denies the charge, there must be substantial corroboration of the prosecuting witness by some other evidence, fact or circumstance in the case. *People* v. *Martin,* 380 Ill. 328, and a number of other cases are also cited in support of this rule. There can be no doubt that these cases present a correct proposition of law, which was properly applied to the facts as revealed in those cases, but there is much dissimilarity in the facts there and the facts that appear from the record in the instant case. In the *Pazell case* the prosecuting witness was seven years of age and her testimony was entirely uncorroborated as to the acts alleged and the testimony as to surrounding circumstances. In the *Martin case* the prosecuting witness was six years of age and the question of identification by the child of tender years was brought about by unusual circumstances. It will readily be observed by the facts as disclosed by this record that both the analyzed cases are not analogous in comparison with the undisputed evidence in the instant case, which presents a long, continued and unusual interest on the part of plaintiff in error in girls of adolescent ages. His acts in giving money to and in entertaining the prosecuting witness and other young girls of immature age in the privacy of his living quarters certainly give rise to an inference that his interest in them was other than platonic. His attempt to negotiate with the parents of prosecuting witness and the testimony offered that he attempted to bribe the People's witnesses is a further inference of guilty knowledge.

Other cases cited by plaintiff in error are differentiated in that they involve the crime of rape and the questions there revolve around the identity of the accused or the question of consent, neither of which is involved here.

Plaintiff in error contends that the prosecuting witness made no complaint and that this casts doubt on her story, and the cases of *People* v. *Blanch,* 309 Ill. 426, and *People* v. *Provenzano,* 305 Ill. 493, are cited in support of this contention. These cases are inapplicable because they are rape cases, and we held in *People* v. *Romano,* 306 Ill. 502, that the rule admitting evidence of a complaint does not extend to the crime of taking indecent liberties with a child, as the reason for receiving such evidence is not present in cases of assault other than rape cases.

It is urged by plaintiff in error that the court admitted improper evidence and unduly limited cross-examination of the People's witnesses. The evidence complained of as having been improperly admitted concerned the efforts of plaintiff in error to negotiate a settlement through bribery. This evidence was proper and relevant as tending to show consciousness of guilt. This comes within the rule announced in the cases of *People* v. *Bloom,* 370 Ill. 144, *People* v. *Borella,* 362 Ill. 218, and *People* v. *Tokoly,* 313 Ill. 177, in which we held that all evidence introduced must be relevant to the guilt or innocence of the accused and such rule is not violated by the admission of evidence that plaintiff in error attempted to suppress evidence against himself. Any attempt by a party to a suit, either civil or criminal, to conceal or, by threats or otherwise, to suppress evidence or obstruct an investigation of an issue, is relevant upon the trial of such issue. In a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence. (*People* v. *Bloom,* 370 Ill. 144; *People* v. *Spaulding,* 309 Ill. 292.) This contention is without merit.

As to the contention that the court unduly limited cross-examination of the People's witnesses, we have examined the record in this respect, and while in one or two instances there is some justification for this complaint, we are not of the opinion, under the facts here, there was substantial denial of the right of cross-examination. The particular questions involved pertained to many bribes that it is alleged had been offered if the prosecuting witness would discontinue the suit. A careful examination of the evidence reveals that the question whether or not there was an effort to extort money from plaintiff in error, or whether or not he offered money to witnesses to testify for his benefit was fully inquired into, both on direct and cross-examination, and the cause was fully presented to the jury in this respect. Considerable latitude is always allowed in the cross-examination of witnesses, but the scope of such examination is largely in the sound discretion of the court. Under this state of the record there seems to be no showing of prejudice in the limitation of the examination.

The next contention is that the court erred in refusing to instruct the jury as requested by the defendant. Instruction No. 5, offered by the defendant, told the jury: "The court instructs the jury that you are not to convict the defendant on the uncorroborated testimony of the prosecuting witness." Instruction No. 7 told the jury: "The court instructs the jury that you are to find the defendant not guilty unless the testimony of the prosecuting witness is corroborated by some other evidence, fact or circumstance in the case."

Neither instruction No. 5 nor instruction No. 7 correctly states the law, as all that is necessary is a substantial corroboration of the prosecuting witness by some other evidence, fact or circumstance in the case. In any event, it is necessary to look to other instructions to apprise the jury of the issues involved. The sole function of instructions is to convey to the minds of the

jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence. Looking over the other instructions, and taking them as a series, we think the jury was fully advised of all the law applicable in this case. *People* v. *Shelton,* 388 Ill. 56; *People* v. *Cione,* 293 Ill. 321.

Moreover, in this case the abstract contains 8 instruction which were given to the jury, but fails to show at whose request any of them were given and also fails to show that they constitute all the instructions given on the trial. In this state of the record the trial court's rulings upon the instructions will not be reviewed. (*People* v. *Coniglio,* 353 Ill. 643; *People* v. *Davolio,* 349 Ill. 153; *People* v. *Dorr,* 346 Ill. 295; *People* v. *Sullivan,* 345 Ill. 87; *People* v. *Petrilli,* 344 Ill. 416.) To have a given instruction reviewed, the bill of exceptions must show that it was given by the court of its own motion or at the request of a party other than the one complaining of it. *People* v. *Sullivan,* 345 Ill. 87.

Further, where the abstract of the record fails to show (as it does here) that the instructions contained therein constitute all the instructions given at the trial, alleged error in refusing to give certain instructions cannot be considered on review. *People* v. *Coniglio,* 353 Ill. 643; *People* v. *Dorr,* 346 Ill. 295.

In the case of *People* v. *Silvia,* 389 Ill. 346, this court said: "To obtain a reversal, errors in giving and refusing instructions are charged. The instructions complained of are not set forth in defendant's brief, which merely directs us to the pages in the record where the instructions appear. This court does not explore the record for this purpose. The abstract discloses that objections were not made to the court's action in either giving or refusing instructions. The

propriety of the challenged instructions is not open to review."

It is next contended the court erred in refusing to allow counsel for plaintiff in error to argue a motion for a new trial. The issues in this case were simple, the witnesses few and there is no showing that plaintiff in error was prejudiced by the court's action in overruling the motion without argument. Under such circumstances, we have held it is not error to refuse to allow argument. *People* v. *Vinci,* 369 Ill. 563; *People* v. *Moretti,* 330 Ill. 422.

It is last contended the prejudicial conduct of the State's Attorney deprived defendant of a fair and impartial trial and that the prosecutor prejudiced the jurors against the defendant by appealing to their religious passions and prejudices and by resorting to improper tactics in order to warp the jurors' judgment.

During the trial certain questions were asked by the State's Attorney which were not proper, but the court sustained the objections, and in one instance a witness testifying for the People, in rebuttal, testified that plaintiff in error asked her to go out with him and she said, "Why you are in court about the three little girls and you want to take me out?" He said, "Yes." That she said, "Is that the way you played with these three little girls?" The court immediately on objection of counsel for plaintiff in error ordered the latter part of the remarks about the children stricken from the record.

It is almost impossible in the trial of a lawsuit to prevent some improper statements getting to the jury, but in cases where the defendant is proved guilty beyond all reasonable doubt, and the jury could not have reached any other verdict, we are not inclined to set aside the verdict unless the conduct of the State's Attorney is so prejudicial that it could reasonably be said it influenced the jury. We do not find such prejudicial conduct in this case. This court has held that where the jury could not, under the

84

record, have reached a different verdict had no such errors intervened, errors on the trial do not always justify a reversal. The verdict of a jury will not be set aside on such grounds unless from the record it can be seen that another verdict might have been reached had no such errors intervened. *People* v. *Baker,* 365 Ill. 328.

We have analyzed this case with its attending circumstances and are of the opinion the evidence is sufficient to support the verdict. It is well settled that where the evidence is in conflict, the credibility of witnesses and the weight to be given to their testimony are for the jury, and where the prosecuting witness is corroborated by other substantial evidence, and the evidence is sufficient to sustain the verdict, it will not be disturbed. (*People* v. *Mocko,* 388 Ill. 442.) The evidence in this case being sufficient to sustain the verdict, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*