**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180059-U

Order filed November 20, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0059 Circuit No. 17-CF-93 |
| ANDRAE MAURICE BOWIE, | ) ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the judgment of the court.
Presiding Justice Lytton and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The cumulative effect of several alleged evidentiary errors did not deny defendant a fair trial, as none of the alleged errors constituted reversible error, nor did the circuit court consider improper factors when making its sentencing determination.

¶ 2     Defendant, Andrae Maurice Bowie, appeals his convictions for home invasion, aggravated criminal sexual assault, criminal sexual assault, and residential burglary. Defendant argues that (1) the cumulative effect of several evidentiary errors denied him a fair trial, and

(2) the Peoria County circuit court penalized him for exercising his constitutional right to trial, thus denying him a fair sentencing hearing. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        The State charged defendant with two counts of home invasion (720 ILCS 5/19-6(a)(3), (a)(6) (West 2016)), one count of aggravated criminal sexual assault (*id.* § 11-1.30(a)(4)), one count of criminal sexual assault (*id.* § 11-1.20(a)(1)), and one count of residential burglary (*id.* § 19-3(a)).

¶ 5        Prior to trial, defendant filed a motion *in limine* requesting that the court exclude evidence of defendant's prior criminal convictions for armed robbery and obstruction of justice. The court denied the motion, saying, "I don't see the bleed or the blend that would connect [defendant's prior convictions] with this case in terms of confusing it."

¶ 6        At trial, Brooklyn Viel testified that three men broke into her home at 6 a.m. on January 28, 2017, and demanded to know where she kept her money. One of the men, whom Viel identified as defendant, put her in a chokehold, walked her into her bedroom, forced her to perform oral sex on him, and forced her to engage in sexual intercourse with him. Defendant's face was uncovered, and he carried a large, silver handgun. During the incident, Viel saw defendant's face and recognized his voice, build, and skin tone from previous interactions. When she reported the incident to law enforcement, she viewed a photographic lineup, where she identified defendant's photograph as her attacker.

¶ 7        Detective Clint Rezac of the Peoria Police Department testified that he reviewed defendant's October 16, 2017, jailhouse phone calls. Over defense counsel's objection, the court allowed the State to play a recording of one call in which defendant requested that the other person find Viel and "[s]ee if we can pay her." Rezac testified that he generated the photographic

2

lineup that Viel observed by entering defendant's physical features, including height and weight, into a computer program that produces images of people with similar features. When defense counsel asked Rezac what height and weight he put into the computer, Rezac replied, "I don't type in a specific weight. It would be what his weight was when he was booked."

¶ 8 Defendant testified that he first met Viel at a bar in October 2016 and interacted with her via social media. Defendant testified that, on the evening of January 27, 2017, he met Viel at a bar and then went home with her where they drank alcohol, smoked, and engaged in consensual sexual intercourse. Defendant said that a friend picked him up in a rental car that both defendant and his friend rented together. Defendant did not know which vehicle his friend drove because they rented a different vehicle each week. Defendant testified that he could afford this because he had "side hustles." The State asked what those side hustles were, and, after the court overruled defense counsel's objection, defendant answered, "Cut hair. Might sell a little marijuana."

¶ 9 After the defense rested, the State entered certified copies of defendant's prior convictions for armed robbery and obstruction of justice into evidence.

¶ 10 The jury found defendant not guilty of one home invasion count, and guilty of the remaining counts. The court sentenced defendant to 40 years' imprisonment for home invasion and 50 years' imprisonment for aggravated criminal sexual assault, to be served consecutively. The court entered a finding but no judgment on defendant's criminal sexual assault and residential burglary convictions. During sentencing, the court made the following comments:

> "You come here and you say I'm gonna sit here at the table and let this unfold, and I'm gonna make that woman testify because you aren't interested in her and you aren't interested in the facts. You are not interested in the law. You are not interested in the truth.

* * *

It was always my impression that you were gonna testify. Now I will say in regard to that keeping it to myself I thought well, good luck on that, [defendant] because I didn't know what this case was about, but I knew that DNA was involved and the State intended to present it because somewhere along the way we had to continue the case because they didn't have it or that person couldn't testify on a certain day, but you apparently didn't believe in the law.

You believed in magic, and you thought apparently that someone in a tuxedo and a cane and a hat that held a rabbit and a bunny would come in and all of a sudden the DNA would be something different I guess, but I always had the impression you would testify because you believed that you were smarter than the average bear.

* * *

And you know it, and I know it, that you believed that the victim was going to fold I guess, maybe not show up or that she would collapse on the stand or she would be nervous or she—or it wouldn't add up.

Her testimony would be impeached or maybe you'd stare her down. I don't know, but it was apparent from the first day that you were in front of me you wanted a trial, and I was fine with that because I'm all about trials.

* * *

If the court reporter could write the word 'sigh' in, oh, done with it, she would do that because that's how you were on the stand because you had to follow Ms. Viel, a tough act to follow.

4

And I agree with you in this part, [defendant]. I think you were—if you didn't say this, you were implying it on the stand a few moments ago. What else could I do, but to take the stand? Yeah, I heard Ms. Viel testify too. That's what I would have said.

What else could I do? Well, maybe confess. What else can I do after hearing that? Well, hope for a heart attack and die in the courtroom perhaps because I don't know how you heard her testimony and thought that was going well. So what did you do? You kept on keeping on. I think I'll lie some more."

¶ 11 When the court denied defendant's motion to reconsider sentence, it stated:

"Not only did you make it clear as you would appear throughout your case when the case would be called, not only did you make it plain that you were almost delighting in the day coming because you were going to be leaving the courtroom—I didn't know what the case was about, but after hearing the evidence, I have to wonder what you were wondering. And your lies and your untruthful remarks just changed by the moment.

And the only time that a version and account of story was finally extracted from [defendant] was after you sat at that table and forced the victim to take that little chair and in front of you, tell what happened. That was insult to injury, and I think that you earned every year your [*sic*] got."

¶ 12 Defendant appeals.

¶ 13 II. ANALYSIS

¶ 14 A. Cumulative Error

5

¶ 15 Defendant argues that the cumulative impact of multiple evidentiary errors made during the proceedings denied him a fair trial. "[W]here errors are not individually considered sufficiently egregious for an appellate court to grant the defendant a new trial, but the errors, nevertheless, create a pervasive pattern of unfair prejudice to the defendant's case, a new trial may be granted on the ground of cumulative error." *People v. Howell*, 358 Ill. App. 3d 512, 526 (2005). In determining whether defendant was denied a fair trial, "we employ the same test that this court uses whenever it applies the second prong of the plain error test. [Citation.] We ask whether a substantial right has been affected to such a degree that we cannot confidently state that defendant's trial was fundamentally fair." *People v. Blue*, 189 Ill. 2d 99, 138 (2000). This is a question of law, which we review *de novo*. *People v. Graham*, 206 Ill. 2d 465, 474 (2003).

¶ 16 Defendant insists that the court erred by admitting into evidence (1) his two prior felony convictions for impeachment purposes, (2) a recording of his jailhouse phone call, (3) testimony that referenced his prior arrests, and (4) his own testimony that he sold marijuana. Defendant failed to preserve these claims by including them in a posttrial motion. See *People v. Johnson*, 238 Ill. 2d 478, 484 (2010) ("When, as here, a defendant fails to object to an error at trial and include the error in a posttrial motion, he forfeits ordinary appellate review of that error."). However, the plain error doctrine enables us to consider unpreserved errors. *People v. Wade*, 131 Ill. 2d 370, 375 (1989). When conducting a plain error analysis, we first determine whether an error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). If so, we then determine whether the error denied defendant a fair trial. *Id.* at 565. We review defendant's evidentiary claims for abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

6

¶ 17                           1. Prior Convictions as Impeachment Evidence

¶ 18            Defendant first argues the court erred by admitting his two prior felony convictions as

impeachment evidence, insisting they were irrelevant and that the court failed to conduct a

proper *Montgomery* balancing hearing. Our supreme court has held that prior convictions are

admissible as impeachment evidence "if the crime, (1) was punishable by death or imprisonment

in excess of one year ***, or (2) involved dishonesty or false statement regardless of the

punishment" (*People v. Montgomery*, 47 Ill. 2d 510, 516 (1971)) unless "its probative value is

substantially outweighed by the danger of unfair prejudice." (Ill. R. Evid. 403 (eff. Jan. 1,

2011)). See also Ill. R. Evid. 609 (eff. Jan. 6, 2015). "Relevant evidence is evidence having 'any

tendency to make the existence of any fact in consequence to the determination of the action

more or less probable than it would be without the evidence.' " *People v. Hope*, 168 Ill. 2d 1, 23

(1995) (quoting *People v. Peeples*, 155 Ill. 2d 422, 455-56 (1993)); see Ill. R. Evid. 401 (eff. Jan.

1, 2011).

¶ 19            The court did not abuse its discretion by admitting defendant's prior convictions as

relevant impeachment evidence, or by failing to verbalize explicitly its application of the

*Montgomery* balancing test. See *People v. McGee*, 286 Ill. App. 3d 786, 792-93 (1997) ("It is

enough that 'there is no reason to suppose that [the circuit court] disregarded the familiar, well-

established *Montgomery* standard in determining that the impeachment was proper.' " (quoting

*People v. Williams*, 173 Ill. 2d 48, 83 (1996))). The State used defendant's prior convictions to

attack his credibility, which was a consequential issue here as the jury was required to make a

credibility determination regarding defendant's and Viel's conflicting accounts. Therefore,

defendant's prior convictions were relevant. Additionally, when the court said it did not "see the

bleed or the blend that would connect" defendant's prior convictions to the charges in the instant

case, we can reasonably infer that it weighed the prior convictions' prejudicial impact against their probative value. See *People v. Groel*, 2012 IL App (3d) 090595, ¶ 43 ("A trial judge is presumed to know the law, and a reviewing court will ordinarily presume the trial judge followed the law unless the record indicates otherwise."). Based on our review of the record, the court did not err by admitting defendant's prior convictions for impeachment purposes.

¶ 20                    2. Defendant's Jailhouse Phone Call Recording

¶ 21      Next, defendant argues that the court erred by permitting the State to play a recording of a phone call he made while incarcerated. Defendant contends this recording was inadmissible other-crimes evidence because it allowed the jury to speculate that he was incarcerated for a different crime. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith ***." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, other-crimes evidence is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Other-crimes evidence is also admissible to show consciousness of guilt. *People v. Boand*, 362 Ill. App. 3d 106, 124 (2005). Such evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Ill. R. Evid. 403 (eff. Jan. 1, 2011). A reviewing court "owes some deference to the [circuit] court's ability to evaluate the impact of the evidence on the jury." *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

¶ 22      Defendant's recorded jailhouse phone call was admissible to prove his consciousness of guilt, and its probative value was not substantially outweighed by the danger of unfair prejudice. See Ill. R. Evid. 403 (eff. Jan. 1, 2011). The fact that defendant tried to have a third party locate and bribe Viel strongly indicates his consciousness of guilt—a wrongly accused man has no need to bribe his alleged victim. See *People v. Gambony*, 402 Ill. 74, 80 (1948) (defendant's efforts to

8

"negotiate a settlement through bribery" were properly admitted to show consciousness of guilt); *People v. Gwinn*, 366 Ill. App. 3d 501, 516-17 (2006) (evidence of defendant's efforts to bribe a witness was properly admitted to show defendant's intent and consciousness of guilt); *People v. Hawkins*, 326 Ill. App. 3d 992, 998 (2001) (evidence that defendant participated in a scheme to bribe the trier of fact was admissible to show consciousness of guilt). Though this evidence prejudiced defendant, the danger of unfair prejudice did not substantially outweigh its probative value, as the trial's outcome hinged on whether the jury believed Viel's or defendant's account of the events in question. Based on our review of the record, the court did not err by admitting the recording of defendant's jailhouse phone call into evidence.

¶ 23                                3. Detective Rezac's Testimony

¶ 24        Defendant also argues that the court erred by admitting Rezac's testimony concerning how he created the photographic lineup in which Viel participated, specifically his statement that the computer program used defendant's weight from "when he was booked." Defendant contends this testimony was irrelevant other-crimes evidence. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith ***." *Id.*

¶ 25        Under the invited error doctrine, a party may not object to testimony they introduced. See *People v. Spates*, 77 Ill. 2d 193, 198 (1979) ("It has been held that a defendant cannot on review object to testimony which he himself introduced."); see also *People v. Clements*, 316 Ill. 282, 284 (1925) ("It is a well-settled principle of law that a party will not be allowed to take advantage of his own wrong or of an error of the court induced by his own motion."). Rezac provided the challenged testimony in response to a question asked by defense counsel. Defendant may not "raise on appeal the error that [he] invited in the trial court." *People v. Harvey*, 211 Ill.

2d 368, 386 (2004). "To permit a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal 'would offend all notions of fair play' ([*People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)]) and 'encourage defendants to become duplicitous' ([*People v. Sparks*, 314 Ill. App. 3d 268, 272 (2000)])." *Id.* at 385. Because defense counsel elicited the allegedly erroneous testimony, the statement was an invited error. Defendant may not prevail by arguing on appeal that the court erred in admitting this testimony into evidence.

¶ 26                                    4. Defendant's Testimony

¶ 27        Defendant further argues that the court erred by permitting the State to elicit defendant's testimony that he might sell marijuana. Defendant once again insists this testimony was irrelevant other-crimes evidence, and its prejudicial impact outweighed its probative value. "Where an accused takes the stand on his own behalf, he tenders his character and reputation as a direct issue, thus subjecting his credibility to the same tests applied to any other witness ***." *People v. Miller*, 13 Ill. 2d 84, 108 (1958). This includes legitimate cross-examination from the State. *People v. Burris*, 49 Ill. 2d 98, 104 (1971). The court has wide discretion when determining the propriety of cross-examination reflecting on a defendant's character. *Miller*, 13 Ill. 2d at 108.

¶ 28        Here, the allegedly erroneous cross-examination centered on how defendant made his money, a material inquiry considering the State charged defendant with residential burglary. Defendant testified that a friend dropped him off at Viel's home, but he did not remember what vehicle his friend drove because they used a different rental car each week. The State asked defendant how they could afford this, a question reasonably related to the charges levied against him. Defendant's unfortunate response was relevant to his credibility, an issue of the utmost importance in a case such as this, where the jury must choose between the defendant's and the

10

victim's conflicting accounts. While the testimony in question certainly prejudiced defendant, its probative value was not substantially outweighed by the danger of unfair prejudice, as it aided the jury in its credibility determination. See Ill. R. Evid. 403 (eff. Jan. 1, 2011). The court did not err in admitting into evidence defendant's statement that he "[m]ight sell a little marijuana" to afford a different rental car each week.

¶ 29     We conclude there is no cumulative error here, as none of the alleged errors defendant presents constitute reversible error. See *People v. Sims*, 2019 IL App (3d) 170417, ¶ 60.

¶ 30                                    B. Sentencing Hearing

¶ 31     Finally, defendant argues that the court penalized him for maintaining his innocence and exercising his constitutional right to trial, thereby denying him a fair sentencing hearing. A circuit court may not punish a defendant for exercising his jury trial right. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). Defendant acknowledges that he forfeited this issue by failing to include it in his motion to reconsider. See *Johnson*, 238 Ill. 2d at 484. He asks us to review the issue under the plain error doctrine, which permits us to analyze unpreserved claims. See *Wade*, 131 Ill. 2d at 375. When conducting a plain error analysis, we determine whether an error occurred, and, if so, whether the error "challenged the integrity of the judicial process." *Piatkowski*, 225 Ill. 2d at 565.

¶ 32     We will set a sentence aside if it is "evident from the judge's remarks" that the sentence was intended to punish defendant for exercising his rights. *Ward*, 113 Ill. 2d at 526. It must be "clearly" evident that the sentence was improper. *Id.* We consider the entire record when making this judgment, not just a "few words or statements." *Id.* We review sentencing decisions for abuse of discretion. *Id.*

11

¶ 33	"A sentence based on improper factors will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008). We will not presume that a court punished a defendant for exercising his constitutional right to a jury trial merely because he received a harsh sentence. See *People v. Andrews*, 2013 IL App (1st) 121623, ¶ 19 ("[T]he mere fact that the defendant is given a greater sentence than was discussed at a pretrial conference, or offered in a plea deal, does not support an inference that the sentence was imposed as a punishment for demanding trial."). "[T]he trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). "In determining the appropriate sentence to impose, the trial court is not bound by a rigid adherence to the rules of evidence but may search anywhere, within reasonable bounds, for facts that tend to aggravate or mitigate the offense." *People v. Meeks*, 81 Ill. 2d 524, 535 (1980).

¶ 34	Defendant contends that, during sentencing, the court punished him for exercising his constitutional trial right. The scathing quotations defendant cites demonstrate the court's dim view of defendant's credibility and character, but they do not indicate that the court wrongfully penalized him. The record shows that the court considered proper factors when making its sentencing determination, including the presentence investigation report, the evidence presented on the record, the parties' respective arguments, defendant's statement in allocution, the statutory aggravating and mitigating factors, defendant's history and character, and the circumstances and nature of the offense. Each of defendant's two Class X felony convictions carried a sentencing range of 6 to 60 years' imprisonment, so the sentences he received fell within the statutorily

12

prescribed range. 730 ILCS 5/5-5-3.2(b)(1), 5-4.5-25(a) (West 2016). The controlling statute mandates that defendant's sentences be served consecutively because the jury convicted defendant of aggravated criminal sexual assault, and the court's sentencing decision complied with this requirement. *Id.* § 5-8-4(d)(2). While the court's words were exceedingly harsh, perhaps unnecessarily so, nothing in the record indicates that it considered any improper factors when sentencing defendant. Based on our review of the record, the court did not punish defendant during sentencing for exercising his constitutional right to trial.

¶ 35                                    III. CONCLUSION

¶ 36          The judgment of the circuit court of Peoria County is affirmed.

¶ 37          Affirmed.