# Illinois Official Reports

## Appellate Court

---

### *People v. Rogers*, 2014 IL App (4th) 121088

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN W. ROGERS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-1088 |
| Filed<br>Modified upon<br>denial of rehearing | July 25, 2014<br><br>August 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated battery was upheld, notwithstanding his contention that the trial court erred in admitting evidence concerning the uncharged threats defendant made shortly before the charged offense, since that evidence explained why the victims did not promptly report defendant's offenses and demonstrated defendant's consciousness of his guilt and there was no fear of prejudice due to the overwhelming evidence of defendant's guilt; however, the cause was remanded to allow the trial court, not the circuit clerk, to assess the mandatory fines. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-CF-242; the Hon. Chris Perrin, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on
Appeal

Michael J. Pelletier, Jacqueline L. Bullard, and Kelly M. Weston, all of State Appellate Defender's Office, of Springfield, for appellant.

John Milhiser, State's Attorney, of Springfield, (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Turner and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a September 2012 jury trial, defendant, John W. Rogers, was found guilty of aggravated battery (720 ILCS 5/12-3.05(a)(1) (West Supp. 2011)) and not guilty of unlawful restraint (720 ILCS 5/10-3 (West 2012)). In November 2012, the trial court sentenced defendant to 5 years' imprisonment, with credit for 206 days served, but did not impose any fines as part of the sentence. The circuit clerk issued various assessments. Defendant appeals, arguing (1) the trial court abused its discretion by admitting evidence of uncharged crimes; and (2) the clerk of the circuit court improperly assessed fines against him. We affirm in part, vacate in part, and remand the cause with directions.

¶ 2                                   I. BACKGROUND
¶ 3    In March 2012, the State charged defendant by information with one count of aggravated battery (720 ILCS 5/12-3.05(a)(1) (West Supp. 2011)) and one count of unlawful restraint (720 ILCS 5/10-3 (West 2012)). The charges generally alleged on March 23, 2012, defendant struck the 15-year-old victim, C.C. (born January 3, 1997), in the face, breaking his nose, and detained the minor victim in defendant's vehicle against his will. The matter proceeded to a jury trial in September 2012.

¶ 4    During the State's opening statement, defendant objected to any references to his conduct at a workshop–namely, allegations defendant took the victim and his 14-year-old friend, Z.C. (born May 1, 1997), to a workshop in the country, placed the victim's arm in a vise, threatened to cut it off with a power saw, and threatened to kill the boys if they told anyone about the incident. The trial court found the evidence relevant to explain the boys' fear of defendant and overruled the objection.

¶ 5    At trial, the victim testified he was standing outside Z.C.'s apartment building when someone walked up behind him and gouged his eyes. He was in shock at what happened but recognized the assailant as his father's friend. The victim willingly went with defendant into his pickup truck, where defendant struck him in the nose and questioned him about breaking into his house. The victim was bleeding from his nasal injury and defendant drove the victim to defendant's house to clean up the blood. After cleaning up, defendant, defendant's girlfriend, Debra Beck, and the victim drove back to Z.C.'s apartment to pick up Z.C. Defendant drove

everyone back to defendant's house to drop off Beck. He then drove the victim and Z.C. to a workshop in the country.

¶ 6 At the workshop, defendant placed the victim's arm in a vise and told him his hand "was going to be smashed until there was nothing there." The victim was able to free his hand from the vise but defendant told the victim not to fight and put his forearm back into the vise. Defendant started a power saw and threatened to cut off the victim's arm. The victim was scared and begged for his life. Defendant eventually let the victim out of the vise and drove the boys back to Z.C.'s apartment. Defendant stated he would find and kill the boys if they "told anyone" about the incident. When defendant dropped the boys off at Z.C.'s apartment, the victim noticed his nose was bent "sideways." The victim and Z.C. agreed not to tell anyone, to "let it blow over" and "get it out of our life." The next day, the victim told his mother he was in a fight with an older teenager because he was too terrified to tell her about defendant. The victim required surgery to fix his broken nose.

¶ 7 Z.C. testified he and the victim were outside Z.C.'s apartment when defendant grabbed the victim and put him in a truck. Z.C. thought he heard defendant say to the victim, "You have something of mine." He thought defendant was the victim's dad and he went inside his apartment. When defendant and the victim returned to Z.C.'s apartment, Z.C. noticed the victim's nose was bent sideways. Z.C. went in defendant's truck because he thought defendant "wanted to talk for a minute." Defendant drove the victim, Z.C., and Beck to defendant's house to drop off Beck and retrieve a key to the workshop. Defendant drove the boys to his workshop in the country. There, defendant put the victim's hand in a vise and said he was going to crush it. Defendant also said he was going to put the victim's head in the vise and "crush his eyeballs out." The victim pulled his arm out of the vise, and defendant grabbed him and said, "Do you want me to slap you?" Defendant put the victim's arm back in the vise, grabbed a power saw, "revv[ed] it up," and threatened to cut the victim's hand off. Defendant eventually let the victim go and drove the boys back to Z.C.'s apartment. Defendant threatened to kill the boys if they "were to tell anybody." Z.C. testified he was too scared to tell anyone until the police visited him.

¶ 8 The victim's mother testified that on March 27, 2012, defendant came to her home and asked to speak with her husband. Her husband was at work, and defendant proceeded to tell the victim's mother that he was responsible for breaking her son's nose. Defendant informed her he thought her son stole marijuana and wanted to teach him a lesson. He explained he put her son into his vehicle, slapped him, cleaned him, "took him out to the country to his dad's machine shed *** [and] put his hand in a vise." Defendant offered to apologize and help pay the victim's medical bills. The victim's mother told defendant to leave her house, and she called the police to report the incident.

¶ 9 Detective Lee Rowden interviewed defendant and informed him of the allegations against him. Defendant said he knew the victim's family but "adamantly denied" the allegations.

¶ 10 Defendant called Beck to testify on his behalf. She testified she was with defendant on March 23, 2012. They ran errands, went to her son's house for a birthday party, picked up Levi Powers (a mutual friend), and went to defendant's "shed out in the country." While at the shed, defendant, Levi Powers, and Beck worked on Beck's new car. The three left the shed at the same time, around 9:30 p.m., stopped for pizza, and returned home to watch a movie before falling asleep. Beck initially told the police defendant was working all day on March 23 and spent the night at a friend's house in Springfield.

¶ 11    Levi Powers testified and corroborated Beck's testimony that he, Beck, and defendant spent March 23 working together on Beck's car, eating pizza, and watching a movie.

¶ 12    Following deliberations, the jury found defendant guilty of aggravated battery and not guilty of unlawful restraint.

¶ 13    Defendant filed a posttrial motion to vacate the guilty verdict and hold a new trial because evidence of uncharged crimes–*i.e.*, the incident at defendant's workshop–should not have been introduced at trial.

¶ 14    In November 2012, the trial court held a hearing on defendant's posttrial motion and sentencing. The court denied the motion. The State noted defendant was in his forties (born October 14, 1968) and argued for a sentence of 10 years; defense counsel noted aggravated battery is a probationable offense and argued for a sentence of probation or if the court imposed a prison sentence, 2 to 4 years. The court sentenced defendant to five years' imprisonment but did not impose any fines. The fine schedule issued by the circuit clerk includes, *inter alia*, the following assessments: (1) $5 child advocacy, (2) $15 State Police operations assistance, (3) $5 drug court, (4) $2 State's Attorney automation, (5) $100 violent crime victims assistance, and (6) $10 probation operations assistance.

¶ 15    This appeal followed.

¶ 16                             II. ANALYSIS
¶ 17                   A. Admissibility of Other-Crimes Evidence
¶ 18    Defendant asserts the trial court abused its discretion when it allowed evidence of an uncharged crime he perpetrated shortly before threatening to kill the victim and a witness. The State argues the evidence is admissible because it is relevant to defendant's consciousness of guilt. We agree with the State.

¶ 19    "It is well settled under the common law that evidence of other crimes is admissible if relevant for any purpose other than to show a defendant's propensity to commit crimes." *People v. Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119; see also Ill. R. Evid. 404(b) (eff. Jan. 1, 2011) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith ***."). Evidence of other crimes is admissible to show motive, intent, identity, lack of mistake and *modus operandi*. *People v. Dabbs*, 239 Ill. 2d 277, 283, 940 N.E.2d 1088, 1093 (2010) (collecting cases). However, even if such evidence is offered for a permissible purpose, it "will not be admitted if its prejudicial impact substantially outweighs its probative value." *Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119.

¶ 20    The admissibility of evidence rests within the discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *People v. Becker*, 239 Ill. 2d 215, 234, 940 N.E.2d 1131, 1142 (2010). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Johnson*, 368 Ill. App. 3d 1146, 1155, 859 N.E.2d 290, 298-99 (2006).

¶ 21    In this case, evidence relating to defendant's conduct in the workshop (*e.g.*, placing the victim's hand in a vise and threatening to cut off his arm with a power saw) and the ensuing threat to kill the victim and a witness were admitted to show why the boys were afraid of defendant and did not report the incident. The incident at the workshop vividly explains why neither the victim nor Z.C. promptly disclosed defendant's offenses to their parents or law

enforcement. Defendant's threat to kill the boys was an attempt to intimidate witnesses and avoid police detection. Such conduct indicates consciousness of guilt. See *People v. Gambony*, 402 Ill. 74, 80, 83 N.E.2d 321, 325 (1948) (an attempt to suppress evidence or obstruct an investigation is relevant as evincing consciousness of guilt); see also *People v. Jones*, 82 Ill. App. 3d 386, 393, 402 N.E.2d 746, 750 (1980) (evidence of attempted intimidation of a witness shows consciousness of guilt and is thus relevant). Thus, the trial court did not err in admitting the evidence.

¶ 22    Further, we cannot say the incident was unduly prejudicial as the evidence against defendant was overwhelming. C.C. testified defendant gouged his eyes and struck him in the nose, causing it to bleed and bend to the side. Z.C. testified defendant approached C.C., said, "You have something of mine," and took him to his pickup truck. When defendant and the victim returned to Z.C.'s apartment, Z.C. noticed the victim's nose was bent sideways. C.C.'s mother testified defendant came to her house and informed her he punched her son in the nose and put his hand in a vise. Defendant offered to apologize and help pay any medical bills. All three witnesses identified defendant in a photo lineup.

¶ 23    Defendant's conduct at the workshop demonstrated his consciousness of guilt regarding the battery charge. No danger of unfair prejudice arose in admitting testimony about the workshop incident as the evidence against defendant was overwhelming. Thus, the trial court did not abuse it discretion in admitting evidence about defendant's conduct at the workshop.

¶ 24                                    B. Fines

¶ 25    Defendant argues this court must vacate fines imposed by the circuit clerk, as the clerk lacked authority to impose the fines. Further, defendant asserts, should the trial court impose fines on remand, he should receive a $5 *per diem* credit against those fines (725 ILCS 5/110-14 (West 2012)). The State concedes fines must be imposed judicially and defendant's case should be remanded for judicial imposition of mandatory fines, subject to available incarceration credit against creditable fines. Finally, the parties dispute whether the probation operations assistance assessment is a fine or fee. 705 ILCS 105/27.3a(1.1) (West 2012) (added by Pub. Act 97-761 (eff. July 6, 2012)).

¶ 26                    1. *Assessments Imposed by the Circuit Clerk*

¶ 27    Defendant argues the clerk of the Sangamon County circuit court improperly imposed fines. The State agrees the clerk cannot impose fines but requests these and additional mandatory fines be reimposed. We accept the State's concession in part.

¶ 28    "This court has consistently held the circuit clerk does not have the power to impose fines." *People v. Montag*, 2014 IL App (4th) 120993, ¶ 37, 5 N.E.3d 246. Fines imposed by the clerks of the circuit courts "flagrantly run contrary to the law, and we trust this unauthorized practice will end without the necessity of this court issuing rules to show cause." *People v. Williams*, 2013 IL App (4th) 120313, ¶ 16, 991 N.E.2d 914.

¶ 29    In this case, the record before us affords no indication the trial court imposed any fines orally at sentencing, in its docket entry, by the written sentencing judgment entered November 20, 2012, or by supplemental sentencing judgment. However, the fine schedule issued by the circuit clerk shows the following assessments: $5 for child advocacy (55 ILCS 5/5-1101(f-5) (West 2012)), $15 for State Police operations assistance (705 ILCS 105/27.3a(1), (1.5), (5) (West 2010) (added by Pub. Act 96-1029 (eff. July 13, 2010))), $5 for drug court (55 ILCS

5/5-1101(f) (West 2012)), $2 State's Attorney automation fee (55 ILCS 5/4-2002(a) (West 2012) (amended by Pub. Act 97-673, § 5 (eff. June 1, 2012))), and $100 for violent crime victims assistance (725 ILCS 240/10(b) (West 2012)). We accept the State's concession the circuit clerk is without authority to impose the following mandatory fines: $5 child advocacy, $5 drug court, and $100 violent crime victims assistance. *People v. Chester*, 2014 IL App (4th) 120564, ¶ 32, 5 N.E.3d 227. Accordingly, we vacate these assessments and remand the cause for the trial judge to impose these fines. *Montag*, 2014 IL App (4th) 120993, ¶ 37, 5 N.E.3d 246.

¶ 30     However, we do not accept the State's concession regarding the $2 State's Attorney automation fee (55 ILCS 5/4-2002(a) (West 2012) (amended by Pub. Act 97-673, § 5 (eff. June 1, 2012))). The assessment is a fee because it "is intended to reimburse the State's Attorneys for their expenses related to automated record-keeping systems." *People v. Warren*, 2014 IL App (4th) 120721, ¶ 108. Thus, the circuit clerk may properly impose the $2 State's Attorney assessment even though it became law after defendant committed the offenses charged in this case. *People v. Dalton*, 406 Ill. App. 3d 158, 163, 941 N.E.2d 428, 434 (2010) ("The prohibition against *ex post facto* laws applies only to laws that are punitive. It does not apply to fees, which are compensatory instead of punitive.").

¶ 31     Additionally, the State correctly concedes the circuit clerk is without authority to impose the $15 State Police operations assistance assessment.

¶ 32                              2. *Probation Operations Assistance*

¶ 33     The parties dispute whether the probation operations assistance assessment is a fine or fee (705 ILCS 105/27.3a(1.1) (West 2012) (added by Pub. Act 97-761 (eff. July 6, 2012))). Defendant argues it is a fine given its punitive nature and automatic application in "felony, traffic, misdemeanor, local ordinance, or conservation case[s] upon a judgment of guilty or grant of supervision." 705 ILCS 105/27.3a(1.1) (West 2012) (added by Pub. Act 97-761 (eff. July 6, 2012)). If it is characterized as a fine, it cannot be assessed against defendant as his offense was committed prior to the effective date of the statute creating this assessment. *Devine*, 2012 IL App (4th) 101028, ¶ 10, 976 N.E.2d 624. In response, the State argues the probation assessment is compensatory in nature because the $10 charge is to reimburse the State for costs incurred–namely, the presentence investigation conducted by the probation office–as a result of defendant's prosecution.

¶ 34     Because the imposition of fines and fees raises a question of statutory interpretation, we review the imposition of the probation operations assistance assessment *de novo*. See *People v. Price*, 375 Ill. App. 3d 684, 697, 873 N.E.2d 453, 465 (2007).

¶ 35     The supreme court has recognized, despite their label as fees, certain assessments imposed pursuant to a conviction are fines. *People v. Graves*, 235 Ill. 2d 244, 250, 919 N.E.2d 906, 909-10 (2009); *People v. Jones*, 223 Ill. 2d 569, 599-600, 861 N.E.2d 967, 985-86 (2006). The nature of an assessment determines whether the assessment constitutes a fine or a fee. Fines are " 'pecuniary punishment[s] imposed as part of a sentence on a person convicted of a criminal offense.' " *Id.* at 581, 861 N.E.2d at 975 (quoting *People v. White*, 333 Ill. App. 3d 777, 781, 776 N.E.2d 836, 839 (2002)). Conversely, fees do not " 'punish a defendant in addition to the sentence he received' "; rather, a fee is " 'a collateral consequence of the defendant's conviction' " that reimburses the State for an expense related to the defendant's prosecution. *Id*. The primary inquiry is whether the assessment "seek[s] to compensate the [S]tate for any

costs incurred as the result of prosecuting the defendant." *Id.* at 600, 861 N.E.2d at 986. If the assessment is compensatory in nature, it constitutes a fee. Therefore, even if the statutory language labels an assessment as a "fee," the assessment still operates as a fine if it fails to reimburse the State for actual costs incurred in prosecuting the defendant. See *Graves*, 235 Ill. 2d at 254-55, 919 N.E.2d at 912.

¶ 36     At issue in this case is whether the probation operations assistance assessment is a fine or fee. Section 27.3a(1.1) of the Clerks of Courts Act, in relevant part, provides that the clerk of "any county that imposes a fee pursuant to subsection 1 of this Section shall also charge and collect an additional $10 operations fee for probation and court services department operations." 705 ILCS 105/27.3a(1.1) (West 2012) (added by Pub. Act 97-761 (eff. July 6, 2012)). The fee "shall be paid by the defendant in any felony, traffic, misdemeanor, local ordinance, or conservation case upon a judgment of guilty or grant of supervision." 705 ILCS 105/27.3a(1.1) (West 2012) (added by Pub. Act 97-761 (eff. July 6, 2012)).

¶ 37     In this case, defendant was eligible for (and requested) probation as his sentence and the trial court ordered the probation office to conduct a presentence investigation and prepare a report of its findings to aid the trial court during sentencing. The charge imposed here is compensatory in nature because it reimburses the State for costs incurred as the result of prosecuting the defendant. *Jones*, 223 Ill. 2d at 600, 861 N.E.2d at 986 (the "most important fact" is whether the assessment seeks "to compensate the [S]tate for any costs incurred as the result of prosecuting the defendant"); see also *People v. White*, 333 Ill. App. 3d 777, 782, 776 N.E.2d 836, 840 (2002) (holding probation fees to be compensatory in nature); *People v. Despenza*, 318 Ill. App. 3d 1155, 1157, 744 N.E.2d 912, 914 (2001) (finding probation fees were not a fine where they were not imposed as a pecuniary punishment).

¶ 38     Indeed, the compensatory nature of the assessment will change in cases where the probation office is not involved in a defendant's prosecution. In these cases, the probation assessment constitutes a fine because it is unrelated to costs incurred by the State as a result of a prosecution. See, *e.g.*, *People v. Unander*, 404 Ill. App. 3d 884, 886, 936 N.E.2d 795, 797 (2010) (drug court fees are *fines* where the record fails to show the fee was intended to reimburse the State for prosecuting the defendant); *People v. Sulton*, 395 Ill. App. 3d 186, 192, 916 N.E.2d 642, 647 (2009) ($10 drug-court assessment was a *fine* because defendant was not prosecuted in the county's drug or mental-health court system and the assessment did not apply to the prosecution of his case). We recognize "[t]he trial courts must now address in each criminal case whether each of the myriad of fees and fines is a fee or a fine as to each defendant depending on the conviction, the sentence, and the penalty." *Id.* at 191, 916 N.E.2d at 646. This sentencing dilemma places an enormous burden on the trial courts and perhaps the legislature will see fit to correct this confusion. *Id.*

¶ 39     In sum, the probation assessment in this case is a fee that is not subject to an *ex post facto* violation and we leave intact the $10 fee for probation and court services department operations. *People v. Bishop*, 354 Ill. App. 3d 549, 562, 821 N.E.2d 677, 690 (2004).

¶ 40                 3. *Remand Directions and Sentence Assessment Credit*

¶ 41     On remand, the trial court should reimpose the following mandatory fines: $5 for child advocacy (55 ILCS 5/5-1101(f-5) (West 2012)), $5 for drug court (55 ILCS 5/5-1101(f) (West 2012)), $10 for county jail medical (730 ILCS 125/17 (West 2012)), $30 to fund expungement of juvenile records (730 ILCS 5/5-9-1.17 (West 2010)), $8 for violent crime victims assistance

(725 ILCS 240/10(b) (West 2012) ($4 for $40 of fine imposed, or fraction thereof, in effect prior to the amendment by Public Act 97-816, § 10 (eff. July 16, 2012))), $20 for the criminal surcharge fine (730 ILCS 5/5-9-1(c) (West 2012) ($10 for $40 of fine imposed, or fraction thereof)), and the $15 State Police operations assistance assessment (705 ILCS 105/27.3a(1), (1.5), (5) (West 2010) (added by Pub. Act 96-1029 (eff. July 13, 2010))). We leave intact the $2 State's Attorney automation fee (55 ILCS 5/4-2002(a) (West 2012) (amended by Pub. Act 97-673, § 5 (eff. June 1, 2012))) and $10 fee for probation and court services department operations (705 ILCS 105/27.3a(1.1) (West 2012) (added by Pub. Act 97-761 (eff. July 6, 2012))).

¶ 42     Defendant requests credit under section 110-14(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-14(a) (West 2012)) against his fines. Section 110-14(a) of the Code (725 ILCS 5/110-14(a) (West 2012)) provides, in pertinent part, as follows: "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." Defendant received 206 days of credit for time served. Thus, defendant has up to $1,030 in credit available against creditable fines.

¶ 43     The $8 violent crime victims assistance fine (725 ILCS 240/10(b) (West 2012)), $20 criminal surcharge fine (730 ILCS 5/5-9-1(c) (West 2012)), and $10 county jail medical fine (730 ILCS 125/17 (West 2012)) are not eligible for monetary credit. We remand for the trial court to calculate and impose the mandatory fines and apply the monetary credit to eligible fines.

¶ 44                                        III. CONCLUSION

¶ 45     For the reasons stated, we affirm defendant's conviction for aggravated battery and vacate the mandatory fines imposed by the clerk of the Sangamon County circuit court. We remand with directions that the trial court (1) reimpose the mandatory fines in this case, (2) direct the circuit clerk to apply defendant's statutory credit against creditable fines, and (3) issue an amended sentencing judgment consistent with this opinion. We further direct the trial court to provide a copy of this opinion to the circuit clerk so he has specific notice of our rulings herein. As part of our judgment, we award the State its $50 statutory assessment against defendant for costs of this appeal. 55 ILCS 5/4-2002(a) (West 2012).

¶ 46     Affirmed in part and vacated in part; cause remanded with directions.