# Illinois Official Reports

## Appellate Court

---

### *People v. Guerrero*, 2018 IL App (3d) 170786

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELOY GUERRERO, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-17-0786 |
| Filed | September 7, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 11-CF-494; the Hon. Scott Shipplett, Judge, presiding. |
| Judgment | Vacated; cause remanded with directions. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Bryon Kohut, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Daniel B. Lewin, Assistant Attorneys General, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE CARTER delivered the judgment of the court.<br>Justice Holdridge specially concurred, with opinion.<br>Justice Schmidt specially concurred, with opinion. |

**OPINION**

¶ 1   Defendant, Eloy Guerrero, appeals from the denial of his motion to withdraw guilty plea, arguing (1) his postplea counsel labored under a *per se* conflict of interest, (2) the circuit court erred in denying his motion to withdraw guilty plea where his plea counsel failed to inform defendant he was subject to mandatory deportation, and (3) he is entitled to $5-per-day credit toward his fines. We vacate and remand with directions.

¶ 2                                    FACTS

¶ 3   On August 20, 2012, defendant pled guilty to conspiracy to commit the offense of unlawful possession of more than 5000 grams of cannabis (720 ILCS 550/4(g) (West 2010); 720 ILCS 5/8-2 (West 2010)) in exchange for a six-year sentencing cap and defendant's cooperation if called to testify. Defendant was represented by Daniel O'Brien, a Knox County alternate public defender. The court explained to defendant that the sentencing cap meant that the State would not ask for more than six years' imprisonment, but that the court could sentence defendant to probation or a period of incarceration, even a period of incarceration greater than six years. The court asked if defendant understood. Defendant stated, "I understand that but, I mean, can I think about this? I mean, I wonder if I can get—it wouldn't affect my immigration status?" The court stated:

> "By pleading guilty here today, this could affect your immigration status. If you're here as—illegally or if you're a holder of a green card, there could be immigration consequences; but immigration is a federal matter. It's not a state matter. And while I could tell you that it's possible that any—that what you do here could lead to your deportation from the United States, I have no idea. *** So I suppose that it could conceivably result in your deportation, but I don't know what will happen."

Defendant's plea counsel then stated, "I've explained it to him as best as I understand the situation with immigration law." Defendant asked if the sentence could be lower. The court stated that defendant could ask for probation, but that it would have to hear and consider the evidence in aggravation and mitigation before deciding on a sentence. Defendant said he understood. Defendant then stated:

> "I wonder if it's possible to get—I mean, because—the way I see it is when after—even if I get probation, I might get in trouble with immigration. I'm legally [*sic*]. I worked too hard to get [to] this point. And, I mean, I committed a mistake. I—I know this. I really—but I never intend to help these guys to sell or—."

The court asked defendant if he believed six years' imprisonment was excessive. Defendant said he did. The court explained to defendant that he would have an opportunity to tell the court he believed six years' imprisonment was excessive at the sentencing hearing; the court would consider defendant's education, record, work history, and any other evidence before deciding on a sentence; and defendant would not be sentenced on that day. Defendant conferred with his attorney and then agreed to go forward with the plea.

¶ 4   As to the factual basis, the State said that agents of multiple federal and state agencies would testify that defendant was overheard, via wiretaps, agreeing to take possession of more than 5000 grams of cannabis that was to be delivered to Knox County, Illinois. There was an interception in excess of 5000 grams of cannabis by Illinois State Police that was to be

delivered to defendant. Defendant agreed that he still wished to plead guilty. The court accepted the plea as knowingly and voluntarily made.

¶ 5 The case proceeded to a sentencing hearing. The State was represented by David Hansen on the first day of the sentencing hearing. The court sentenced defendant to three years' probation and 90 days in jail. Defendant was assessed a $1000 drug assessment, a $50 court fund fine, a $5 teen court fine, a $30 child advocacy center fine, a $5 drug court fine, a $10 State Police Operations Assistance Fund fine, a $10 probation operations fine, a $25 drug traffic prevention fund fine, and a $100 Trauma Center Fund fine.

¶ 6 On November 28, 2012, defendant, still represented by O'Brien, filed a motion to withdraw his guilty plea. The motion stated that the plea was "made in error" as defendant "felt pressured into pleading guilty although he didn't fully understand the consequences." The motion further stated that defendant's "attorney didn't properly explain the consequences that [defendant's] conviction would have on his immigration status." In an affidavit attached to the motion, defendant averred:

> "I feel that I was pressured into pleading guilty in that I didn't understand the full consequences that my guilty plea would have on my immigration status.
>
> I also feel that my attorney improperly advised me as to how my guilty plea and conviction could affect my status as an immigrant."

¶ 7 A hearing was held on the motion. Defendant testified that when he pled guilty, he was aware "that there could possibly be ramifications for [his] immigration status or ability to get *** citizenship." Defendant stated that he "hear[d] about being deported" and went to see an immigration lawyer. The immigration lawyer told him that, even though he was sentenced to probation, he could still be deported, even if he followed the guidelines of his probation. Defendant stated he was surprised to hear that. Defendant said O'Brien had told him that he did not know what would happen to defendant's immigration status. However, O'Brien never told him that he would not be deported. Defendant said that, at that time, no immigration proceedings had been brought against him. O'Brien did try to have the charge amended based on defendant's immigration status so that defendant ultimately pled to a lower charge than the original charge.

¶ 8 O'Brien then stated:

> "I don't actually feel like I erroneously advised [defendant] of the immigration consequences, but I do believe that he was left with an erroneous impression of the immigration consequences through some kind of miscommunication which was certainly in part because of my own lack of familiarity with immigration law.
>
> I talked to an immigration attorney and I did research on my own but it just isn't really my area of expertise and *** as [defendant] testified, I essentially said I didn't know what was going to happen in the end, whether he would get deported or wouldn't get deported. *** I get the impression that, again, through a combination of my not fully understanding of the exact process by which immigration works and just the process of communicating all this back and forth with [defendant], I do believe that he *** had a misapprehension of what the actual immigration consequences were of this plea."

¶ 9 The court denied the motion, noting:

"I don't think Mr. O'Brien is—has led you astray by telling you that there could be consequences and neither did I when we were talking about it in court. I told you that there could be immigration consequences but nobody knows what's going to happen. That's just a risk you have to take. And I think that you were fully aware that there's—there is a risk."

¶ 10 Defendant appealed, and this court summarily remanded the case for proper admonishments under Illinois Supreme Court Rule 605(c) (eff. Oct 1, 2001). The court properly admonished defendant, and O'Brien filed another motion to withdraw guilty plea on defendant's behalf. The motion stated that defendant felt pressured into pleading guilty when he did not fully understand the consequences. The motion further stated that the plea was made in error because defendant "received ineffective assistance of counsel in that his attorney gave him erroneous advice and failed to properly advise him of the consequences of his guilty plea and that, but for this objectively unreasonable advice, he would not have pled guilty." The motion asserted that there was a doubt as to defendant's guilt and that he had a meritorious defense.

¶ 11 A hearing was held on the motion, during which David Hansen, now working for the public defender's office (see *supra* ¶ 5), represented defendant. No evidence was presented. The court then denied the motion, stating:

"The fact that you could be deported does not mean that the government would deport you. What you're entitled to be advised of is that there could be immigration consequences, and it could be deportation. And Mr. O'Brien said on the record that he told you about that, and I explained it on the record as well."

¶ 12                                         ANALYSIS

¶ 13 On appeal, defendant argues (1) his postplea counsel, David Hansen, labored under a *per se* conflict of interest where he appeared on behalf of the State at defendant's sentencing hearing, (2) the court erred in denying his motion to withdraw the guilty plea where plea counsel was ineffective for failing to affirmatively inform defendant that he was subject to mandatory deportation if he pled guilty to conspiracy to commit the offense of unlawful possession of more than 5000 grams of cannabis, and (3) he is entitled to $5-per-day credit towards his fines. We will consider each argument in turn.

¶ 14                                   I. *Per Se* Conflict

¶ 15 Defendant first contends that his postplea counsel labored under a *per se* conflict of interest, as he appeared for the State at defendant's sentencing hearing. The State confesses error. After reviewing the record, we accept the State's confession.

¶ 16 The right to effective assistance of counsel includes the right to conflict-free representation. *People v. Hernandez*, 231 Ill. 2d 134, 142 (2008). A *per se* conflict of interest exists "when defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant." *Id.* at 143-44. When a *per se* conflict exists, the defendant need not show that the conflict prejudiced him, and the court on appeal must reverse unless the defendant affirmatively waived the conflict. *People v. Spreitzer*, 123 Ill. 2d 1, 14-17 (1988). Where counsel represented the prosecution in the same case, "inquiry into the precise nature

and extent of [counsel's] personal involvement is [n]either necessary [n]or desirable." *People v. Kester*, 66 Ill. 2d 162, 168 (1977).

¶ 17   Here, Hansen appeared on behalf of the State during defendant's sentencing hearing. He then went to work for the public defender's office and represented defendant during his motion to withdraw guilty plea. Because Hansen represented the interests of the State during defendant's case before representing defendant, Hansen labored under a *per se* conflict of interest. There is nothing in the record to show that defendant affirmatively waived this conflict. As stated above (*supra* ¶ 16), defendant is not required to show that he was prejudiced by such conflict.

¶ 18   Therefore, we vacate the circuit court's order denying defendant's motion to withdraw guilty plea and remand for new postplea proceedings, including (1) the appointment of conflict-free counsel, (2) the opportunity to file a new motion to withdraw guilty plea, if counsel deems a new motion is necessary, (3) certification under Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016), and (4) a new hearing on the motion to withdraw guilty plea.

¶ 19                    II. Ineffective Assistance of Plea Counsel

¶ 20   Defendant next argues that the circuit court erred in denying his motion to withdraw guilty plea. Specifically, defendant argues that plea counsel was ineffective for failing to affirmatively inform defendant that he was subject to mandatory deportation if he pled guilty to conspiracy to commit the offense of unlawful possession of more than 5000 grams of cannabis. Because we vacated defendant's motion to withdraw guilty plea and remanded for new postplea proceedings (*supra* ¶ 18), we need not answer the question of plea counsel's ineffectiveness. Instead, the circuit court will be tasked with determining anew whether defendant should be allowed to withdraw his guilty plea and, thus, whether plea counsel was ineffective.

¶ 21   However, we would be remiss if we did not provide some guidance to the circuit court to use when making such a determination. In order for defendant to withdraw his guilty plea based on his ineffective assistance of counsel claim, defendant has to show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceedings would have been different but for counsel's errors. *People v. Valdez*, 2016 IL 119860, ¶ 14; *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation, and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring in judgment)).

¶ 22   We note that *Padilla* is particularly applicable here. In *Padilla*, the defendant pled guilty to drug distribution charges in Kentucky. *Id.* at 359. His plea counsel not only failed to inform him that he faced deportation consequences if he pled guilty, but told him he " ' "did not have to worry about immigration status since he had been in the country so long." ' " *Id.* The United States Supreme Court determined that "constitutionally competent counsel would have advised [the defendant] that his conviction for drug distribution made him subject to automatic deportation." *Id.* at 360. In doing so, the Court stated:

    "In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 U.S.C. § 1227(a)(2)(B)(i) ('Any alien who at any time after admission has been convicted of a

- 5 -

violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance …, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable'). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at 368-69.

The Court went on to advise that

"When the law is not succinct and straightforward ***, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id.* at 369.

Therefore, the Court determined that plea counsel's performance was deficient and remanded for the Kentucky courts to determine whether Padilla had been prejudiced by his counsel's deficient performance. *Id.*

¶ 23    Here, defendant's conviction for conspiracy to commit the offense of unlawful possession of more than 5000 grams of cannabis falls under section 1227(a)(2)(B)(i) of title 8 (8 U.S.C. § 1227(a)(2)(B)(i) (2006)), the same federal statute as Padilla's conviction. See *supra* ¶ 22. The Supreme Court determined that that portion of the statute explicitly provided for mandatory deportation and that Padilla's counsel was required to inform him of that mandatory deportation. Therefore, for a defendant whose conviction falls under the same statute, deportation is also "presumptively mandatory" and plea counsel must inform him or her of such. See *Padilla*, 559 U.S. at 368-69; see also *People v. Guzman-Ruiz*, 2014 IL App (3d) 120150, ¶¶ 19-20.

¶ 24    We take no position on whether plea counsel's advice to defendant regarding the deportation consequences satisfied the requirement set forth in *Padilla*. Instead, we leave that finding for the circuit court to make on remand. Should the court find that counsel's performance was deficient, defendant must then establish that he was prejudiced by counsel's deficient performance. To establish prejudice, defendant must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). To do so, defendant must present "either a claim of innocence or the articulation of a plausible defense that could have been raised at trial." *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005).

¶ 25                                    III. $5-Per-Day Credit

¶ 26    Lastly, defendant argues that he is entitled to $5-per-day credit toward his fines. The State confesses error, but argues that defendant is not entitled to credit towards the $10 probation operations assessment, contending that it is a fee and not a fine. After reviewing the record, we

accept the State's confession and award defendant the credit towards his fines. We further find that the probation operations assessment is a fine for which credit can be applied.

¶ 27 "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14(a) (West 2012). The application for monetary credit for time spent incarcerated prior to sentencing may be raised at any time and at any stage of court proceedings. *People v. Caballero*, 228 Ill. 2d 79, 88 (2008).

¶ 28 At sentencing, defendant was given 354 days of presentence custody credit, but was not given any monetary credit. Defendant was also assessed the following fines, which are subject to be offset by the $5-per-day credit (see *People v. Johnson*, 2015 IL App (3d) 140364 (appendix)): (1) $1000 drug assessment (*People v. Jones*, 223 Ill. 2d 569, 588 (2006)); (2) $50 court fund fine (*People v. Graves*, 235 Ill. 2d 244, 253 (2009)); (3) $5 teen court fine (*People v. Richards*, 394 Ill. App. 3d 706, 709 (2009)); (4) $30 child advocacy center fine (*People v. Jones*, 397 Ill. App. 3d 651, 660-61 (2009)); (5) $5 drug court fine (*People v. Williams*, 2011 IL App (1st) 091667-B, ¶ 19); (6) $10 State Police Operations Assistance Fund fine (*People v. Bell*, 2012 IL App (5th) 100276, ¶ 42); (7) $25 Drug Traffic Prevention Fund fine (*People v. Devine*, 2012 IL App (4th) 101028, ¶ 10); and (8) $100 Trauma Center Fund fine (*Jones*, 223 Ill. 2d at 593).

¶ 29 Moreover, this court has held that the probation operations assessment is a fine subject to $5-per-day credit. *People v. Carter*, 2016 IL App (3d) 140196, ¶¶ 55-56. In doing so, we stated,

> "The probation operations assistance fee is assessed against all criminal defendants 'upon a judgment of guilty or grant of supervision' regardless of whether probations services were actually utilized in each defendant's case. 705 ILCS 105/27.3a(1.1) (West 2012). As such, we conclude the probation operations assistance assessment qualifies as a fine, created to generate a fund to support probation and court services, regardless of a defendant's actual utilization of those services." *Carter*, 2016 IL App (3d) 140196, ¶ 56.

We noted that in *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 37, the Fourth District created a dichotomy: finding the assessment would be a fee when a defendant was sentenced to probation and a fine when a defendant was not sentenced to probation. *Carter*, 2016 IL App (3d) 140196, ¶ 57. We declined to follow this, instead solely finding that the assessment was a fine. *Id.* We continue to reject *Rogers*, and instead adhere to our holding in *Carter* that the assessment was a fine. Defendant is therefore entitled to $5-per-day credit toward the $10 probation operations assessment as well.

¶ 30 Accordingly, as defendant was incarcerated 354 days before he was sentenced, he is entitled to a full reduction of his $1235 of eligible fines.

¶ 31                                              CONCLUSION

¶ 32 The judgment of the circuit court of Knox County is vacated and remanded with directions.

¶ 33 Vacated; cause remanded with directions.

¶ 34    JUSTICE HOLDRIDGE, specially concurring:

¶ 35    I join in the majority's judgment, and I agree with Justice Carter's analysis, with one exception. Citing *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005), Justice Carter states that, to establish prejudice in this case, the defendant must present " 'either a claim of innocence or the articulation of a plausible defense that could have been raised at trial.' " *Supra* ¶ 24 (quoting *Hall*, 217 Ill. 2d at 335-36). However, this standard for establishing prejudice does not apply where, as here, the defendant's claim for ineffective assistance of counsel is predicated on his plea counsel's failure to inform him of the potential immigration consequences of pleading guilty. *People v. Deltoro*, 2015 IL App (3d) 130381, ¶¶ 21-27. To establish prejudice in this context, a defendant must merely demonstrate that his decision to reject the plea bargain "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *Deltoro*, 2015 IL App (3d) 130381, ¶ 22. "A defendant facing potential deportation may show that his decision to reject a plea offer and go to trial is rational without showing that he would have likely succeeded at trial." *Deltoro*, 2015 IL App (3d) 130381, ¶ 22.

¶ 36    For the reasons set forth in *Deltoro* (and in my dissent in *People v. Valdez*, 2015 IL App (3d) 120892, ¶¶ 46-47 (Holdridge, J., dissenting), and my partial concurrence in *People v. Guzman*, 2014 IL App (3d) 090464, ¶¶ 77-80 (Holdridge, J., dissenting in part and specially concurring in part)), I disagree with Justice Carter's articulation of the governing standard for establishing prejudice in this case. I join Justice Carter's analysis in all other respects.

¶ 37    JUSTICE SCHMIDT, specially concurring:

¶ 38    I concur in the judgment.