2021 IL App (2d) 200577-U
No. 2-20-0577
Order filed December 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-2435 |
| DEXTER L. WHITE, | ) ) | Honorable Debra D. Schafer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) The State proved beyond a reasonable doubt that defendant committed aggravated domestic battery by strangling the victim; the absence of physical injury to the victim did not bar a guilty finding. (2) The State did not create a "mini-trial" on other-crimes evidence consisting of defendant's prior act of domestic violence toward the victim.

¶ 2     Defendant, Dexter L. White, appeals the judgment of the circuit court of Winnebago County finding him guilty of one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)) and one count of domestic battery (720 ILCS /12-3.2(a)(1) (West 2016)).  Defendant contends that (1) he was not proved guilty of aggravated domestic battery because the State did

not establish that he strangled the victim and (2) the court's admission of other-crimes evidence created a "mini-trial" that denied him due process. We reject both contentions and affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was indicted on one count of aggravated domestic battery based on his knowingly strangling Amanda Wolfe by grabbing her by the neck and intentionally impeding her normal breathing or circulation of blood (720 ILCS 5/12-3.3(a-5) (West 2016)) and one count of domestic battery based on his knowingly striking Wolfe and causing a cut (720 ILCS 5/12-3.2(a)(1) (West 2016)).  The alleged date of the offenses was September 11, 2016.

¶ 5     In pretrial proceedings, the State brought two motions *in limine* relevant to this appeal.  In the first motion, the State sought to introduce evidence of defendant's prior commission of domestic violence against Wolfe (see 725 ILCS 5/115-7.4 (West 2018)), namely a January 2012 incident that led to a conviction of aggravated domestic battery.  The second motion sought to introduce a letter that defendant sent to Wolfe in February 2019 while he was in prison on another offense.  The trial court granted both motions.

¶ 6     At defendant's bench trial on the current offense, the State called Wolfe and Rockford police officer Richard Beaufils to testify to the January 2012 incident.  Beaufils testified that on January 4, 2012, he went to an apartment in response to a domestic-battery complaint.  As he approached the front door, defendant ran out the back door.  Defendant was apprehended a short time later.  When Officer Beaufils spoke to Wolfe, he saw that she had scratches on her neck and redness on the left side of her face.  Wolfe provided a written statement, which the court admitted into evidence.

¶ 7     Wolfe testified that, on January 2, 2012, she and defendant had an argument about his not providing financial support for their children.  Defendant then hit her in the mouth with an open

hand, cutting her lips. Wolfe fell onto the bed, and defendant began choking her. According to Wolfe, defendant placed both of his hands around her neck with his thumbs in the middle. Wolfe had difficulty breathing. When Wolfe's sister entered the bedroom, defendant released his grip on Wolfe's throat and left.

¶ 8 Wolfe then testified about the charged offenses. On September 11, 2016, she rode with defendant to his apartment. As they approached the rear door of the apartment, they argued. Then defendant hit her in the mouth, cutting her lips. Defendant knocked Wolfe to the ground. As Wolfe was lying on her back, defendant "put his hand to [her] throat." According to Wolfe, defendant placed his hand "[a]cross the front of [her] throat." When he did so, Wolfe could not breathe and felt as though she would die. When Wolfe asked to leave, defendant told her to walk home. Wolfe ran to her mother's home—about six blocks away. As she ran, she called her mother and told her to call the police.

¶ 9 Christina Wolfe, Wolfe's mother, testified that she received a phone call from Wolfe at about 7:36 p.m. on September 11, 2016. Wolfe sounded scared and was crying and talking fast. Wolfe said that defendant had choked and hurt her. Wolfe told Christina to hang up and call the police. Christina did so. Her 911 call was played in court, and she admitted that she did not tell the dispatcher that Wolfe had been choked. But she added that she and Wolfe told the responding officers that defendant choked Wolfe.

¶ 10 Wolfe also testified that defendant wrote her letters while he was in prison on another offense. He sent the letters to his mother, who passed them on to her. She identified the February 2019 letter that was the subject of the State's motion *in limine*. According to Wolfe, defendant asked her in the February 2019 letter to write an affidavit regarding the 2016 incident. However, Wolfe declined, "[b]ecause it would [have been] lying."

¶ 11    Defendant wrote as follows in the February 2019 letter.  He had heard that Wolfe was "not going to show up to court."  He "encourage[d] that."  He included with his letter a blank affidavit for her to complete.  He wanted her to write in the affidavit that (1) the two of them argued on September 11, 2016, (2) he did not harm her, and (3) she was forced to lie that he harmed her.  He told her to give the affidavit to his mother, who would pass it to his attorney.  Defendant further wrote that he needed Wolfe's cooperation.

¶ 12    Michelle Kamholtz testified for the defense that she was defendant's girlfriend on September 11, 2016.  On that date, she was "hanging out" with defendant at his apartment.  A car pulled up during the late afternoon or early evening, and Wolfe got out.  Wolfe and defendant argued, but nothing physical happened.  Wolfe then walked away.

¶ 13    During closing argument, the prosecutor asked the court to find defendant guilty based on the testimony, "the propensity evidence that was presented[,] and the jail letters *** indicative of this defendant's consciousness of guilt."  After discussing the direct evidence of guilt, the prosecutor noted that "what also is important is the [February 2019 letter]" that indicated defendant's consciousness of guilt.  The prosecutor reminded the court that defendant gave Wolfe step-by-step instructions on what to say in the affidavit, that defendant was telling Wolfe to lie, and that the letter's purpose was to help defendant get out of jail.  The prosecutor also asked the court to consider the January 2012 incident as showing defendant's propensity to commit domestic violence.  The prosecutor concluded by asking the trial court to consider "all the evidence that was presented in this case."

¶ 14    In finding defendant guilty of both counts, the trial court noted Wolfe's testimony that defendant choked her with one hand.  The court found Wolfe credible and Kamholtz not credible.  The court further noted that the absence of any physical injury to Wolfe's throat did not mean that

a battery did not occur. The court was also "very concerned" about the February 2019 letter asking Wolfe to provide a false affidavit. As for the 2012 incident, the court stated that it was "not placing much weight on that." That defendant was convicted of choking Wolfe in 2012 "[did] not necessarily indicate to [the court] that he would have or would not have on this occasion." The court emphasized that, "[p]rimarily, [its] ruling is based on the evidence that [it] received about what happened in 2016 and the defendant's reaction to it with [the February 2019] letter." The court sentenced defendant to 12 years' imprisonment on the aggravated domestic-battery conviction and a concurrent 8-year prison term on the domestic-battery conviction. Following the denial of his posttrial motion, defendant filed this timely appeal.

¶ 15                                  II. ANALYSIS

¶ 16    On appeal, defendant contends that (1) he was not proved guilty beyond a reasonable doubt of strangling Wolfe, which is a necessary element of the aggravated domestic battery charge; and (2) the State and the court focused on other-crimes evidence, creating an improper mini-trial that denied him a fair trial.

¶ 17    In resolving defendant's sufficiency-of-the-evidence contention, we must first address his assertion that—because the facts were not in dispute—the applicable standard of review is *de novo*, as opposed to the highly deferential standard under *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We disagree. *De novo* review does not apply in every case where the facts are not in dispute. *People v. Ford*, 2015 IL App (3d) 130810, ¶ 16. Where a reasonable person could draw different inferences from a set of undisputed facts, it is left to the trier of fact to resolve those questions. *Ford*, 2015 IL App (3d) 130810, ¶ 16. We "use the *Jackson* [or *Collins*] standard of review to determine whether the State presented sufficient evidence to satisfy the elements of the crime charged." *People v. Zaibak*, 2014 IL App (1st)

123332, ¶ 48. Thus, where, as here, a defendant contends that undisputed facts were insufficient to establish the elements of the offense, we apply the *Collins* standard.

¶ 18     Under *Collins*, a reviewing court considers whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. In conducting that review, our role is not to retry the defendant. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). Instead, we give great deference to the factfinder's determinations regarding witness credibility and the inferences drawn from their testimony. *People v. McLaurin*, 184 Ill. 2d 58, 79 (1998). We will reverse a defendant's conviction only if the evidence is so improbable or unsatisfactory that reasonable doubt of guilt remains. *McLaurin*, 184 Ill. 2d at 79.

¶ 19     Here, defendant was charged under section 12-3.3(a-5) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.3(a-5) (West 2016)), which requires proof that a defendant, while committing domestic battery, strangled another individual. 720 ILCS 5/12-3.3(a-5) (West 2016). That section defines "strangle" as "intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual." 720 ILCS 5/12-3.3(a-5) (West 2016).

¶ 20     Here, Wolfe testified that defendant knocked her to the ground and placed his hand "[a]cross the front of [her] throat." When he did so, Wolfe could not breathe and felt as though she would die. Wolfe's testimony established that defendant intentionally impeded her normal breathing by applying pressure to her throat. That was sufficient to establish that defendant strangled her within the definition of section 12-3.3(a-5). See *People v. Gary*, 2017 IL 120958, ¶ 36 (testimony of a single witness is sufficient to convict if positive and credible).

¶ 21     Wolfe's testimony was bolstered by the February 2019 letter, in which he encouraged her to falsely state in an affidavit that he never struck or harmed her.  That letter showed defendant's consciousness of guilt.  See *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 21 (citing *People v. Gambony*, 402 Ill. 74, 80 (1948) (evidence of a defendant's attempt to prevent a witness from testifying against him is relevant as consciousness of guilt)).  When viewed in the light most favorable to the prosecution, Wolfe's testimony and the February 2019 letter proved beyond a reasonable doubt that defendant committed domestic battery within the meaning of section 3.3(a-5) of the Code by strangling Wolfe.

¶ 22     Defendant asserts, however, that, because the State failed to submit evidence of any physical injury to Wolfe's throat or neck, it failed to prove strangulation.  We disagree.  Section 3.3(a-5) requires proof of the intentional impeding of normal breathing or blood circulation but not proof of physical injury.  Moreover, as the trial court noted, strangulation can occur without causing any visible physical injury to the throat or neck.  Thus, it was unnecessary for the State to show that Wolfe suffered any physical injury to her neck or throat.

¶ 23     Defendant's reliance on *People v. Lindsey*, 73 Ill. App. 3d 436 (1979), and *People v. King*, 2020 IL 123926, is misplaced.  In *Lindsey*, an expert opined that, because there was no evidence of hemorrhages or fractures to the structures of the air passages in the deceased victims' necks, they had not been strangled.  *Lindsey*, 73 Ill. 2d at 441.  However, the court in Lindsey did not hold that such evidence was necessary to prove strangulation.  Similarly, in *King*, an expert opined that the victim had been strangled because there was evidence of hemorrhages in her eyes, throat, and tongue.  *King*, 2020 IL 123926, ¶ 14.  However, the *King* court did not hold that such evidence was necessary to prove that strangulation had occurred. Thus, neither case supports defendant's position.

¶ 24    We next address whether the State so focused on the other-crimes evidence that it created a mini-trial around that evidence and thus denied defendant a fair trial. Initially, we note that the parties dispute whether defendant forfeited this issue by failing to raise it in the trial court and whether the plain-error doctrine applies to excuse the forfeiture. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) ("The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances."). We need not decide whether defendant forfeited the issue or whether plain error resulted, as no error occurred. See *Thompson*, 238 Ill. 2d at 613 (first step in plain-error analysis is to determine whether any error occurred).

¶ 25    Defendant does not challenge the admissibility, as other-crimes evidence, of the January 2012 incident and the February 2019 letter. Instead, he asserts that he was denied a fair trial because the State and the court focused too much on other-crimes evidence.

¶ 26    It is well-established that admitting other-crimes evidence should not lead to a " 'mini-trial' of the collateral offense." *People v. Walston*, 386 Ill. App. 3d 598, 619 (2010) (quoting *People v. Nunley*, 271 Ill. App. 3d 427, 432 (1995)). Accordingly, a trial court should carefully limit the details of the other crimes to what is necessary to illuminate the issue for which the evidence was introduced. *Walston*, 386 Ill. App. 3d at 619. The adversity toward such a mini-trial of the prior offense applies the principle that evidence should not be admitted where it causes unfair prejudice, jury confusion, or unnecessary delay. *Walston*, 386 Ill. App. 3d at 619.

¶ 27    Here, defendant had a bench trial. Thus, there was no risk of jury confusion. Nor was there any unnecessary delay, as the trial was completed in less than a day.

¶ 28    That leaves the question of whether there was unfair prejudice—there was not. The testimony regarding the January 2012 incident was relatively brief and consisted only of what was

necessary to establish its similarity to the charged offense. Nor did the prosecutor overemphasize the incident, mentioning it only once in the opening statement and once in closing argument. More importantly, the trial court noted that it did not "plac[e]much weight" on the incident. Thus, we cannot conclude a mini-trial occurred regarding the January 2012 incident.

¶ 29 As for the February 2019 letter, the State offered it, and the trial court considered it, only as showing defendant's consciousness of guilt. To the extent the letter suggested another crime, such as witness tampering, there is simply no indication that the State or the trial court considered it as other-crimes evidence. Thus, whatever the emphasis on the letter, it did not amount to a mini-trial on other-crimes evidence.

¶ 30                                    III. CONCLUSION

¶ 31 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 32 Affirmed.